UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Shelly Kiel, *Plaintiff*, vs The Mayo Clinic; a Minnesota non-profit corporation, *Defendant*. | Court File No. 22-CV-1319 **COMPLAINT** **JURY TRIAL DEMANDED** |

Plaintiffs make the following allegations for their complaint against the Defendant the Mayo Clinic.

## INTRODUCTION

1. In October, 2021, Defendant the Mayo Clinic mandated that all employees receive the Covid-19 vaccination as a condition of continuing their employment ("Vaccine Mandate"). Many of Defendant Mayo's employees, including Plaintiff, objected to receiving these vaccinations because of her sincerely-held religious beliefs. Plaintiff filed a request for a religious exemption with Defendant Mayo to be exempt from taking the Covid-19 vaccination. Defendant Mayo denied the requested exemption. In addition, Defendant Mayo failed to undertake an individual interactive process as required for evaluating religious exemption requests. Finally, only a couple of months after terminating Plaintiff, Defendant Mayo reversed part of its vaccine mandate, demonstrating that the terminations were unnecessary or a pretext.

2. Based on Defendant Mayo' implementation of the Vaccine Mandate and its refusal to grant Plaintiff her request for a religious exemption, Plaintiff brings claims under Title VII for religious discrimination, the Americans with Disabilities Act based on Defendant Mayo mandating a vaccine, related state claims under the Minnesota Human Rights Act for religious discrimination and disability discrimination and breach of contract.

## JURISDICTION AND VENUE

3. Plaintiff has fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act, including the filing of a Charge with the EEOC, and the receipt of a right-to-sue letter from Equal Employment Opportunity Commission ("EEOC") following closure of the EEOC file, all in compliance with 42 U.S.C. §2000e-5(f)(1).

4. This Court has original subject matter jurisdiction over this case, as it raises claims pursuant to federal statute, pursuant to 28 U.S.C. §1331. This Court further has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5. This Court has personal jurisdiction over Defendant the Mayo Clinic as an entity as it is a non-profit corporation operating in and located in the State of Minnesota.

6. Defendant Mayo Clinic is subject to the provisions of Title VII and the ADA because Defendant Mayo Clinic employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

7. Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1) because the actions giving rise to this cause of action occurred in Minnesota, and Defendant Mayo Clinic conducts business in the State of Minnesota.

## PARTIES

8. Plaintiff Shelly Kiel is a former employee of Defendant the Mayo Clinic.

9. Defendant the Mayo Clinic is a Minnesota non-profit corporation headquartered in Minnesota which operates medical facilities in Minnesota.

10. Plaintiff Shelly Kiel is a Minnesota resident who worked as an LPN for Defendant Mayo for over 18 years. Plaintiff Kiel tested positive for Covid-19 and recovered, which provided her with natural immunity. Plaintiff Kiel requested a religious exemption from the Vaccine Mandate and then a request a reconsideration, which were both denied. Plaintiff Kiel is a Christian who believes, based on her interpretation of scripture, that her body is a Temple to the Holy Spirit and it violates her religious beliefs and conscience to take the Covid-19 vaccine. Defendant Mayo terminated Plaintiff Kiel's employment on January 3, 2022 based on her refusal to take the Covid-19 vaccine. Plaintiff Kiel filed a charge with the EEOC and received a Right to Sue letter from EEOC dated February 15, 2022.

11. Plaintiff Kiel has had positive job performance reviews, even being called a "role model," a "joy to work with," and "always very helpful."

## FACTS

12. During the pandemic in 2020 and 2021, Plaintiff Kiel was asked to work her own and frequently additional shifts in order to cover the increase in treatment and

3

care for patients during the height of the Covid-19 pandemic. At that time, Plaintiff Kiel, while unvaccinated, continued to provide patient care while employed by Defendant Mayo.

13. Defendant Mayo recognized the important work that all of its employees were doing—the unvaccinated and the vaccinated—and on September 28, 2021 the President and CEO of Mayo Clinic (Gianrico Farrugia, M.D.), along with the Chief administrative Officer (Jeff Bolton) wrote to Mayo's employees:

> "*On behalf of the leaders of Mayo Clinic's sites and shields, thank you for the compassionate care you provide to our patients, your excellent service to Mayo Clinic, and the supportive and collaborative environment you create for all of our colleagues. We truly appreciate you and your efforts to live our values every day*."

14. However, just two weeks later, Defendant Mayo implemented its Vaccine Mandate. The Vaccine Mandate stated that "all Mayo Clinic staff members" must get vaccinated with one of the Covid-19 vaccines or else the employees would be considered "noncompliant," later "placed on unpaid leave," and eventually "terminated." The Vaccine Mandate applied to "all staff, including remote workers," of which Defendant Mayo had many. Recognition of the important work performed by the unvaccinated employees disappeared only two weeks after being celebrated.

15. The Vaccine Mandate was announced on October 13, 2021. Defendant Mayo's policy required all staff to become vaccinated against COVID-19, and that if they were not already vaccinated or only partially vaccinated, they would have to become vaccinated or be approved for a medical or religious exemption by December 3, 2021, or be terminated.

16. On October 25, 2021, Defendant Mayo sent a communication outlining the steps to comply with the COVID-19 vaccination policy. Beginning on December 3, 2021, Defendant Mayo issued Final Written Warnings to noncompliant staff with instructions on complying by January 3, 2022, or be terminated.

17. Defendant Mayo announced that there were both medical and religious exemptions from the Vaccine Mandate, and did allow for employees to apply for "*medical and religious exemptions*" to the Vaccine Mandate, and even provided "*forms*" for such applications.

18. However, what Defendant Mayo gave with one hand, it took away with the other by proclaiming that "*it is anticipated that a <u>small number of staff will have qualifying religious exemption</u>.*" (emphasis added) It further wrote: "*applications for a religious exemption will be denied if the panel determines the applicant <u>does not demonstrate a sincerely held religious belief</u>*, (emphasis added). Further, Defendant Mayo declared: *"[o]nly a <u>small number of staff are expected to qualify for a religious exemption</u>.*" (emphasis added).

19. Defendant Mayo thus put itself in the position of deciding the sincerity of the religious belief of the Plaintiffs and, whether a belief was "religious" or not.

20. Defendant Mayo also expressed limitations to the "*medical exemption*" to the Vaccine Mandate by stating: "*The only absolute medical contraindications to vaccination for COVID-19 are severe or immediate reaction to a prior does of the vaccine, known allergy to a vaccine component, or a preexisting and clinically diagnosed fear of needles.*" Other medical conditions were preemptively discounted or disregarded.

5

21. The pre-determined limitations on its religious and medical exemption policies were supposed to be kept in the dark, as Defendant Mayo wrote to the high-ranking personnel who were to implement the policies: "*This message is intended for regional supervisors, managers and other leaders, so please do not share broadly.*" (emphasis added).

22. After Plaintiff Kiel was told of her denial of her request for a religious exemption, Plaintiff Kiel was also instructed: "*Do not distribute, forward, or copy the content of this notification.*"

23. Defendant Mayo created an ad hoc panel to review such exemption requests. As noted above, Plaintiff submitted a request for an exemption, but nearly every request for religious exemption was denied by Defendant Mayo, with the exception that some were granted, but conditioned upon submission to invasive, supervised weekly testing.

24. As a result of Defendant Mayo's policy on restricting religious and medical exemptions, very few people qualified for those exemptions, resulting in mass terminations for those, including Plaintiff Kiel, who refused the Covid-19 vaccinations.

25. The denials of the requests for religious exemptions all contained the same boilerplate language:

> "*Thank you for submitting your request for religious exemption. The information you provided was carefully considered. While this may not be the news you were hoping to receive, your religious accommodation has not been approved. Based on the information provided, your request did not meet the criteria for a religious exemption accommodation.*"

26. There was no case-by-case analysis or individualized interactive process to discuss Plaintiff Kiel's exemption request or possible accommodation. In response to requests for explanation or information, Defendant Mayo wrote: "HR is not able to share what criteria was used to review/approve the exemption. A small team of employees reviewed each request and based on what was provided to them from each individual employee is what was used in the approval/denial decision." Rather than engage in a legitimate interactive process, respect the sincerity of plaintiff's religious beliefs, or attempt reasonable accommodation, Defendant Mayo used more boilerplate language to justify its pre-determined result:

> "*Generally, denials occur because the requestor has not clearly stated their sincerely held belief, demonstrated it is a sincerely and consistently held belief, and/or clearly defined the conflict between their religious belief and receiving the COVID-19 vaccine.*"

27. Defendant Mayo actually specifically disavowed an individual interactive process by writing: "Specific feedback on individual requests will not be provided, … it is not possible to provide individual feedback."

28. Plaintiff Kiel sought further clarification on Defendant Mayo's criteria for determining whether a religious belief constituted a "sincerely held religious belief," and the basis for Defendant Mayo determining that Plaintiff Kiel did not have a "sincerely held religious belief," but the Plaintiff Kiel was simply given the generalized, identical language in the letters.

29. In its form denial letters, Defendant Mayo announced that it would accept appeals of its uniform denial decisions. "*If you would like to submit additional clarifying*

7

*information, you may submit a reconsideration request here*." Plaintiff Kiel took advantage of that process and submitted additional information supporting her request for exemption.

30. Following these requests for reconsideration, however, Defendant Mayo again issued identical denial letters to nearly every employee who appealed. The transmittal email messages stated: "*Unfortunately, the additional information you provided did not change the outcome as it did not meet the criteria for a religious accommodation.*" Again, no interactive process was used to evaluate the requests for exemptions.

31. Defendant Mayo did not provide information about its process for determining whether the employees sincerely held religious beliefs would be accommodated either.

32. Both the original denial of the religious exemption and the denial of the requests for reconsideration contained this warning at the bottom: "*Do not disseminate, distribute, forward, or copy the content of this notification.*"

33. Defendant Mayo staff were further instructed to *"endorse the vaccine or say nothing."*

34. Defendant Mayo terminated Plaintiff Kiel' employment on January 3, 2022 based on her refusal to obtain a Covid-19 vaccine.

35. Plaintiff Kiel submitted good-faith statements of her sincerely-held religious beliefs, with explanations of how her faith constrained her from accepting the Covid-19 vaccination. Defendant Mayo's *ad hoc* panel nevertheless denied Plaintiff

8

Kiel's request for an exemption and made no effort to accommodate her request for a religious exemption.

36.     Defendant Mayo employed Plaintiff Kiel as a licensed practical nurse in the Family Medicine department.  In her work as a licensed practical nurse, one of Plaintiff Kiel's job duties as a licensed practical nurse was to review on Defendant Mayo's computer system incoming messages from patients received either by phone or a message portal the patients could use and respond to these messages.  On average, Plaintiff Kiel, as well as the other licensed practical nurses and certified medical assistants, would spend 25%-30% of her time accessing these messages and responding to these messages because of the volume of messages coming into the system each day.  All of this type of work could have been done remotely by Plaintiff Kiel.

37.     During the Covid-19 pandemic, Defendant Mayo had told its licensed practical nurses, including Plaintiff Kiel, that one of the options Defendant Mayo was considering for continuing to work with patients during the pandemic was to have licensed practical nurses meet with patients remotely (for instance, via "Zoom") or communicate with the patients by phone.  One accommodation Defendant Mayo could have made with Plaintiff Kiel would be to have her work remotely by responding to patient messages 100% of the time.  On average, Defendant Mayo had approximately 15-20 licensed practical nurses or certified medical assistants working at the Owatonna facility each day and those licensed practical nurses and certified medical assistants would also spend approximately 30% of their time responding to patient messages. Therefore, Plaintiff Kiel could have devoted 100% of her time to accessing these

9

messages remotely from her computer at home and responding to the messages without causing Defendant Mayo any hardship much less undue hardship.

38. Plaintiff Kiel also had contracted Covid-19 prior to Defendant Mayo implementing its Vaccine Mandate. In December, 2021, Plaintiff Kiel had her blood tested for Covid-19. The test result was positive for Covid-19 meaning that Plaintiff Kiel had immunity from Covid-19. Plaintiff Kiel attempted to show these results to Defendant Mayo but Defendant Mayo refused to consider the results.

39. Defendant Mayo did grant religious exemptions to some of its employees. However, those employees were required to undergo weekly testing for the Covid-19 virus. If the religiously exempt employee tested positive for Covid-19, the employee would be required to quarantine from Defendant Mayo for a specified period of time (14 days) before the person could return to work. Plaintiff Kiel was not offered this testing program. However, even if Plaintiff Kiel had been offered this testing program, Plaintiff Kiel would have been required to quarantine for 14 days and then could have returned to work.

40. The Covid-19 vaccines are being mandated for the employees to be "fully vaccinated," despite the phrase "fully vaccinated" having a definition that has changed from one shot, to two shots, then three shots, then four shots, and even a discussion of a fifth shot or annual shots.

41. Defendant Mayo mandated its employees, including Plaintiff Kiel, take the Covid-19 vaccine despite accumulating evidence that the vaccine does not provide

protection as long lasting as had been previously represented, does not prevent infection or transmission, but only allegedly reduces the severity of Covid-19 when you get it.

42. While many claimed that the Covid-19 pandemic was a pandemic of the unvaccinated, now the overwhelming majority of people with COVID were vaccinated to one extent or another.

43. In fact, the numbers of Covid-19 positive hospital patients was also overstated.

44. Thus, the extent of Covid-19 infections, the severity of the Covid-19 infection, and the efficacy of the vaccines, and the time-length of vaccine protection may all have been overstated, contributing to an over exuberance in mandating vaccines, and punishing the unvaccinated, as Defendant Mayo Clinic has done as set forth above.

45. Additionally, Plaintiff Kiel had Covid-19 and recovered, which gave her natural immunity. Natural immunity has long been recognized in the scientific and medical communities. While Defendant Mayo has acknowledged that natural immunity will prevent someone from contacting a disease from which they have recovered, Defendant Mayo pled ignorance as to how long natural immunity will last for Covid-19 stating that: "*duration of immunity after COVID-19 infection is not known.*" Defendant Mayo has allowed "employees with recent Covide-19 infections to defer vaccination for 90 days." As a result, Defendant Mayo is either admitting that natural immunity lasts at least 90 days, or Defendant Mayo is admitting that there are dangers to receiving the vaccine less than 90 days from the time of infection.

11

46. In fact, early on in the Covid-19 pandemic, and before any vaccines were available, Defendant Mayo provided free testing to determine "*how many Mayo Clinic staff have developed antibodies against SARS-Co-V-2.*"

47. Rather than disclosing the results of its determination on the numbers of Defendant Mayo "staff" that "have developed antibodies against SARS-Co-V-2," or disclosing studies on the "duration of immunity after Covid-19," (which some studies have asserted are many times more effective than vaccine immunity), Defendant Mayo has not made public this information and instead issued its Vaccine Mandate.

48. On March 14, 2022, Defendant Mayo suspended its Vaccine Mandate and testing program. As a result, Defendant Mayo's remaining unvaccinated employees are now treated similarly to vaccinated employees.

49. After terminating the Plaintiff Kiel, Defendant Mayo suspended weekly testing effective March 14, 2022, which means that those (like Plaintiff Kiel) who refused weekly testing and were terminated between January 2022 and March 14, 2022, would no longer be forced to test weekly, and would no longer be terminated for objecting to testing, which Defendant Mayo has now determined is unnecessary.

## FIRST CAUSE OF ACTION

**Religious Discrimination and Failure to Accommodate under  
Title VII of the Civil Rights Act of 1964**

50. Plaintiff restates and realleges paragraphs 1 through 49 as if fully set-forth herein.

51. Defendant Mayo Clinic is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

52. Plaintiff Kiel is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

53. Plaintiff Kiel has a sincerely held religious belief which prevented her from receiving the vaccine. Plaintiff Kiel's beliefs arise because of her Christian beliefs.

54. Plaintiff Kiel informed Mayo of the conflict between her religious belief and the Vaccine Mandate.

55. Title VII of the Civil Rights Act prohibits discrimination on the basis of religion. *Id.* § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs. *Id.* § 2000e(j).

56. The law prohibits Defendant Mayo from scrutinizing what it believes to be the sincerity of Plaintiff's religious beliefs, or whether Plaintiff's exercise of her beliefs is logical or as consistent as Defendant Mayo believes they should be.

57. Guidance issued by the Equal Employment Opportunity Commission and decisions of the federal courts require that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of undue hardship or "direct threat" by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

58. In response to the Plaintiff Kiel's request for reasonable accommodation of her sincerely-held religious beliefs, Defendant Mayo and its ad hoc panel applied a uniform, blanket rule in rejecting nearly all, in violation of both Title VII and the EEOC's persuasive guidance on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

13

59. Despite the Plaintiff Kiel's consistent requests for Defendant Mayo to engage in an interactive process regarding her request for accommodation, Defendant Mayo refused throughout to engage in the interactive process and instead rejected Plaintiff Kiel's request for an exemption for identical reasons as other Defendant Mayo employees using an identical form letter.

60. As set forth above, Defendant Mayo could have accommodated Plaintiff Kiel's request for a religious exemption without suffering any undue hardship by having her work remotely.

61. Defendant Mayo's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of 42 U.S.C. §§ 2000(e)-2 and 2000(e)(j).

62. Because of Defendant Mayo's unlawful actions, Plaintiff Kiel suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION
### State law religious discrimination claim under MHRA 363A.08

63. Plaintiff restates and realleges paragraphs 1 through 62 as if fully set-forth herein.

64. Minn. Stat. Sec. 363A.01, et seq prohibits discrimination in employment based on religion.

65. Defendant Mayo Clinic is an "employer" within the meaning of Minn. Stat. 363A.01.

66. Plaintiff Kiel is an "employee" within the meaning of Minn. Stat. 363A.01.

67. Plaintiff Kiel has a sincerely held religious belief which prevented her from receiving the Covid-19 vaccine.

68. Plaintiff Kiel informed Defendant Mayo of the conflict between her religious belief and the Vaccine Mandate.

69. Minn. Stat. 363A.01 et seq prohibits discrimination on the basis of religion and further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs.

70. Minn. Stat. 363A.01 et seq prohibits Defendant Mayo from scrutinizing what it believes to be the sincerity of Plaintiffs' religious beliefs, or whether Plaintiffs' exercise of their beliefs is logical or as consistent as Defendant believes they should be.

71. In response to the Plaintiff Kiel's request for reasonable accommodation of her sincerely-held religious beliefs, Defendant Mayo and its ad hoc panel applied a uniform, blanket rule in rejecting nearly all, in violation of the law on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

72. Despite Plaintiff Kiel's request for Defendant Mayo to engage in dialogue, Defendant Mayo refused throughout to engage in the interactive process, and instead rejected Plaintiff Kiel for generalized reasons, using an identical form letter.

73. Defendant Mayo's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of Minn. Stat. sec. 363A.01 et seq.

74. Because of Defendant Mayo's unlawful actions, Plaintiff Kiel has suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## THIRD CAUSE OF ACTION

### Discrimination and Failure to Accommodate under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

75. Plaintiff Kiel restates and realleges paragraphs 1 through 74 as if fully set-forth herein.

76. Defendant Mayo is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A).

77. Plaintiff Kiel is an "employee" within the meaning of 42 U.S.C. § 12111(4).

78. The Americans with Disabilities Act at 42 U.S.C. § 12112 (d)(4)(a) prohibits employers from requiring current employees to undergo medical examinations or inquires unless it is job related and consistent with business necessity.

79. Defendant Mayo's Vaccine Mandate violated 42 U.S.C. § 12112 (d)(4)(a).

80. As a result of Defendant Mayo's wrongful actions, Plaintiff Kiel suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FOURTH CAUSE OF ACTION

### Wrongful Discharge - Minnesota Refusal of Treatment Statute.

81. Plaintiff Kiel restates and realleges paragraphs 1 through 80 as if fully set-forth herein.

82. Minn. Stat. § 12.39 creates a right for individuals "to refuse medical treatment, testing, physical or mental examination, [or] vaccination. . . ." The law further requires that those health care professionals administering vaccination notify the individual of the right to refuse the vaccination. *Id*. § 12.39, Subd. 2 (the "Refusal of Treatment" statute).

> "… individuals have a fundamental right to refuse medical treatment, testing, physical or mental examination, vaccination, participation in experimental procedures and protocols, …". Further, "before performing … vaccination of an individual … a health care provider shall notify the individual of the right to refuse the … vaccination, …".

83. Plaintiff Kiel is an "individual" who has a "fundamental right" to "refuse medical treatment and "vaccines."

84. Defendant Mayo is a "private entity" and a "health care provider" who is obligated to "notify the individual of the right to refuse vaccinations."

85. The State of Minnesota is no longer under a state-declared "emergency," as Governor Timothy Walz officially ended the State's emergency effective June 30, 2021.

86. Plaintiff Kiel has objected to being required to undergo compulsory medical treatment, including invasive injections, vaccinations, and testing. This refusal is protected by Minn. Stat. §12.39, and constitutes a refusal to engage in conduct contrary to Minnesota Public Policy. As a result of Plaintiff Kiel's refusal to accede to Defendant

17

Mayo's imposition of such illegal conditions, Plaintiff Kiel has been harassed, suspended, discharged (explicitly or constructively), and had her earned benefits taken away.

87. Defendant Mayo's actions in punishing the Plaintiff Kiel for refusing to engage in conduct prohibited by state law and public policy constitutes wrongful discharge. Defendant Mayo admitted in 2021 that vaccinations could not be mandatory and must instead be voluntary. Mayo changed its policy in October 2021. Subsequently, in March, 2022, Mayo changed its policy again to no longer require weekly testing for unvaccinated employees.

88. As a result of Defendant Mayo's illegal actions taken against Plaintiff Kiel, Plaintiff Kiel has suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FIFTH CAUSE OF ACTION
### Breach of Contract/Promissory Estoppel

89. Plaintiff Kiel restates and realleges paragraphs 1 through 88 above as if fully set-forth herein.

90. Defendant Mayo had a policy of honoring diversity, equity and inclusion, including the protection of the religious rights of its employees.

91. Defendant Mayo wrote that it "is committed to upholding laws prohibiting discrimination and/or harassment on the basis of race, color, creed, *religion,* gender, *age*, national origin, marital status, sexual orientation, veteran's status, *disability*, or status with regard to public assistance." (emphasis added).

92. Defendant Mayo's policies and statements created a contract between it and its employees.

93. Defendant Mayo's actions in terminating Plaintiff Kiel, discriminating against her on the basis of her religious beliefs, constitutes a breach of that contract.

94. Plaintiff Kiel has been damaged by Defendant Mayo's breach of contract.

95. In the alternative, Defendant Mayo's promises to its employees, both written and verbal, created an expectation on which the employees, including Plaintiff Kiel, relied to her detriment. Defendant Mayo's promises to its employees, including Plaintiff Kiel, should be enforced to avoid injustice.

## JURY DEMAND

Plaintiff Kiel demands a trial by jury on all claims and issues for which they have a right to trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff above-named prays for judgment in her favor and against Defendant Mayo and for an Order of the Court as follows:

1. Adjudging that Defendant is liable to Plaintiff for her actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2. Enjoining Defendant from taking further illegal action against Plaintiff in violation of both state and federal law, and Ordering Defendant to take action to

restore Plaintiff to her positions they would have enjoyed absent Defendant's illegal conduct;

3. Awarding Plaintiff her costs, attorney fees, prejudgment interest, and any other relief permitted by statute; and

4. Awarding such other relief as the Court may deem just and equitable.

Dated: May 16, 2022

*s/Gregory M. Erickson*
Gregory M. Erickson, 276522
Vincent J. Fahnlander, 19220X
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: fahnlander@mklaw.com
*Attorneys for Plaintiffs*