## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Shelly Kiel, | Court File No. 22-CV-1319 JRT/BRT |
| *Plaintiff,* | |
| *vs* | **AMENDED COMPLAINT** |
| Mayo Clinic Health System Southeast Minnesota; a Minnesota non-profit corporation, | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

Plaintiff makes the following allegations for her amended complaint against the Defendant the Mayo Clinic Health System Southeast Minnesota, ("Defendant Mayo").

## INTRODUCTION

1.     In October, 2021, the Defendant Mayo  mandated that all employees receive the Covid-19 vaccination as a condition of continuing their employment ("Vaccine Mandate").  Many of Defendant Mayo's employees, including Plaintiff, objected to receiving these vaccinations because of her sincerely-held religious beliefs. Plaintiff filed a request for a religious exemption with Defendant Mayo to be exempt from taking the Covid-19 vaccination.  Defendant Mayo denied the requested exemption. In addition, Defendant Mayo failed to undertake an individual interactive process as required for evaluating religious exemption requests.  Finally, only a couple of months after terminating Plaintiff, Defendant Mayo reversed part of its vaccine mandate, demonstrating that the terminations were unnecessary or a pretext.

2.     Based on Defendant Mayo's implementation of the Vaccine Mandate and its refusal to grant Plaintiff her request for a religious exemption, Plaintiff brings claims under Title VII for religious discrimination, the Americans with Disabilities Act based on Defendant Mayo mandating a vaccine, related state claims under the Minnesota Human Rights Act for religious discrimination and disability discrimination and breach of contract.

## JURISDICTION AND VENUE

3.     Plaintiff has fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act, including the filing of a Charge with the EEOC, and the receipt of a right-to-sue letter from Equal Employment Opportunity Commission ("EEOC") following closure of the EEOC file, all in compliance with 42 U.S.C. §2000e-5(f)(1).

4.     This Court has original subject matter jurisdiction over this case, as it raises claims pursuant to federal statute, pursuant to 28 U.S.C. §1331. This Court further has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.     This Court has personal jurisdiction over the Defendant Mayo  as  an entity as it is a non-profit corporation operating in and located in the State of Minnesota.

6.     Defendant Mayo  is subject to the provisions of Title VII and the ADA because Defendant Mayo employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

2

7.      Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1) because the actions giving rise to this cause of action occurred in Minnesota, and Defendant Mayo conducts business in the State of Minnesota.

## PARTIES

8.      Plaintiff Shelly Kiel is Steele County, Minnesota resident, and a former employee of Defendant the Mayo.

9.      Defendant Mayo is a Minnesota non-profit corporation headquartered in Minnesota which operates medical facilities in Minnesota.

10.      Plaintiff Shelly Kiel is a Minnesota resident who worked as an LPN for Defendant Mayo for over 18 years.

11.      Plaintiff Kiel tested positive for Covid-19 and recovered, which provided her with natural immunity.

12.      Plaintiff Kiel requested a religious exemption from the Vaccine Mandate and then a request for reconsideration, which were both denied.

13.      Plaintiff Kiel is a Christian who believes, based on her interpretation of scripture, that her body is a Temple to the Holy Spirit and it violates her religious beliefs and conscience to take the Covid-19 vaccine.  Plaintiff Kiel believes that she must protect her body, God's Temple, and cannot put into it substances which are impure or dangerous.  Further, her religious beliefs prevent her from putting into her body the Covid-19 vaccines which are available, because they were all produced with or tested with cells from aborted human babies.  Receiving the vaccine would make her a participant in the abortion that killed the unborn baby.

14.     Defendant Mayo terminated Plaintiff Kiel's employment on January 3, 2022 based on her refusal to take the Covid-19 vaccine.  Plaintiff Kiel filed a charge with the EEOC and received a Right to Sue letter from EEOC dated February 15, 2022.

15.     Plaintiff Kiel has had positive job performance reviews, even being called a "role model," a "joy to work with," and "always very helpful."

## FACTS

16.     During the pandemic in 2020 and 2021, Plaintiff Kiel was asked to work her own and frequently additional shifts in order to cover the increase in treatment and care for patients during the height of the Covid-19 pandemic.  At that time, Plaintiff Kiel, while unvaccinated, continued to provide patient care while employed by Defendant Mayo.

17.     When Covid-19 vaccines first became available in December 2020, Defendant Mayo encouraged, but did not require its employees to get vaccinated.

18.     Defendant Mayo recognized in November 2020, in the words of Dr. Gregory Poland, head of Mayo Clinic's Vaccine Research Group, that "we can't mandate that people take a vaccine, it's their right not to take one."

19.     Again in December 2020 Defendant Mayo recognized that "vaccination is voluntary."

20.     Defendant Mayo also recognized, as it must, that some of its employees would have religious objections to taking the vaccine, and accordingly, Defendant Mayo had a policy until September 2021, of granting all or nearly all requests for religious exemptions.

4

21.     In litigation in October 2021, Defendant Mayo boasted that it granted 90% of requests for religious exemptions, and since it was so lenient in granting requests for religious exemptions, the Plaintiffs in that case had no standing because it was unlikely they would suffer any negative consequences as a result of Defendant Mayo's Vaccine Mandate.

22.     Defendant Mayo recognized the important work that all of its employees were doing—the unvaccinated and the vaccinated—and on September 28, 2021 the President and CEO of Mayo Clinic (Gianrico Farrugia, M.D.), along with the Chief administrative Officer (Jeff Bolton) wrote to Mayo's employees:

> "*On behalf of the leaders of Mayo Clinic's sites and shields, thank you for the compassionate care you provide to our patients, your excellent service to Mayo Clinic, and the supportive and collaborative environment you create for all of our colleagues.  We truly appreciate you and your efforts to live our values every day*."

23.     However, just two weeks later, Defendant Mayo implemented its Vaccine Mandate.  The Vaccine Mandate stated that "all Mayo Clinic staff members" must get vaccinated with one of the Covid-19 vaccines or else the employees would be considered "noncompliant," later "placed on unpaid leave," and eventually "terminated."  The Vaccine Mandate applied to "all staff, including remote workers," of which Defendant Mayo had many.  Recognition of the important work performed by the unvaccinated employees disappeared only two weeks after being celebrated.

24.     The Vaccine Mandate was announced on October 13, 2021. Defendant Mayo's policy required all staff to become vaccinated against COVID-19, and that if they were not already vaccinated or only partially vaccinated, they would have to become

vaccinated or be approved for a medical or religious exemption by December 3, 2021, or be terminated.

25.     On October 25, 2021, Defendant Mayo sent a communication outlining the steps to comply with the COVID-19 vaccination policy.  Beginning on December 3, 2021, Defendant Mayo issued Final Written Warnings to noncompliant staff with instructions on complying by January 3, 2022, or be terminated.

26.     Defendant Mayo announced that there were both medical and religious exemptions from the Vaccine Mandate, and did allow for employees to apply for "medical and religious exemptions" to the Vaccine Mandate, and even provided "forms" for such applications.

27.     However, what Defendant Mayo gave with one hand, it took away with the other by proclaiming that "it is anticipated that a small number of staff will have qualifying religious exemption."  (emphasis added).  Further, Defendant Mayo declared: "[o]nly a small number of staff are expected to qualify for a religious exemption." (emphasis added).

28.     Defendant Mayo printed and distributed this message that it would only grant a "small number" of the religious exemptions as it simultaneously argued the opposite in Federal Court in Minnesota.  Defendant Mayo argued in Federal Court that Plaintiffs alleging to be harmed as a result of the newly implemented Vaccine Mandate had no justiciable controversy, no standing, and the Court had no subject matter jurisdiction because Defendant Mayo granted nearly all requests for religious exemptions.  Defendant Mayo argued that "the only competent record evidence show that

6

current Mayo employees' declinations [requests for exemption to vaccine] will not be

'denied,'" and that "Mayo has granted 90% (27 of 30) of new employees' requests for

religious exemptions." Def. Mayo Memo in Opp. To Mot. For TRO, filed October 8,

2021.[1]

29.    In Federal Court, Defendant Mayo succeeded in convincing the Court there

was no subject matter jurisdiction, because unvaccinated employees had not been

terminated as of that time (October 2021), and likely would not be terminated because of

Defendant Mayo's generous granting of religious exemptions.  As a result of Defendant

Mayo's representations to the Court, Defendant Mayo obtained dismissal without

prejudice of the Complaint in that case.

30.    Shortly after achieving victory on the basis that it generously had granted

90% of the requests for religious exemptions, Defendant Mayo then switched to its new

position that it would grant only a "small number" of the requests for religious

exemptions, and it denied Plaintiff's their requests for a religious exemption and then

terminated Plaintiff.

31.    Defendant Mayo further wrote in its new Vaccine Mandate policy:

"applications for a religious exemption will be denied if the panel determines the

---

[1] *Mary Roe 1, et al., v. Allina Health Systems, et al.*, (including Mayo Clinic), Case 0:21-cv-
02127, filed October 8, 2021.  Defendant Mayo also wrote that it "has not terminated or
threatened to terminate any employee for failing to obtain Covid-19 vaccination or seeking an
exemption," pp. 5-6; "all but one [of the plaintiffs] have requested exemptions that, if granted,
will allow them to *remain* unvaccinated and employed,"  pp. 7-8;  "they [unvaccinated Mayo
employee plaintiffs] have not suffered any harm and may *never* suffer any harm," p. 8, 10;
"Plaintiffs cannot secure standing with vague allegations that exemptions under some
(unidentified) vaccination policies are 'narrow' and 'limited,'" p. 11; and "rank speculation that
an exemption *could* be denied does not confer standing." P. 11. (emphasis in original).

applicant does not demonstrate a sincerely held religious belief, (emphasis added). Defendant Mayo thus put its unidentified panelists in the position of deciding the sincerity of the religious belief of the Plaintiffs and, whether a belief was "religious" or not.

32.     Defendant Mayo also expressed limitations to the "medical exemption" to the Vaccine Mandate by stating: "The only absolute medical contraindications to vaccination for COVID-19 are severe or immediate reaction to a prior dose of the vaccine, known allergy to a vaccine component, or a preexisting and clinically diagnosed fear of needles."  Other medical conditions were preemptively discounted or disregarded.

33.     The pre-determined limitations on its religious and medical exemption policies were supposed to be kept in the dark, as Defendant Mayo wrote to the high-ranking personnel who were to implement the policies: "This message is intended for regional supervisors, managers and other leaders, so please do not share broadly." (emphasis added).

34.     After Plaintiff Kiel was told of her denial of her request for a religious exemption, Plaintiff Kiel was also instructed: "Do not distribute, forward, or copy the content of this notification."

35.     Defendant Mayo created an ad hoc panel to review such exemption requests for taking the Covid-19 vaccine, but kept the identity of the panelists secretive, so as to prevent examination of the guidelines and criteria Defendant Mayo used in evaluating the requests for religious exemptions.  Defendant Mayo wrote: "individual names [of the ad hoc panelists] are confidential and will not be shared."

36.     Plaintiff has a sincerely held religious belief, and submitted a request for an exemption, but it was denied. as a result of Defendant Mayo's policy on restricting religious and medical exemptions, very few people qualified for those exemptions, resulting in mass terminations for those, including Plaintiff Kiel, who refused the Covid-19 vaccinations.

37.     Plaintiff proposed a reasonable accommodation to Defendant Mayo, such as wearing a mask, self-monitoring for symptoms, and voluntarily reporting symptoms and quarantining as necessary.

38.     Plaintiff had worked for approximately one and one-half years prior to the Vaccine Mandate, and Plaintiff had fully performed her employment duties and even obtained positive and glowing job performance reviews.

39.     Plaintiff has not been determined to have transmitted Covid-19 to other employees or patients.

40.     Defendant Mayo's denial of Plaintiff's request for a religious exemption contained the same boilerplate language as contained in Defendant's denials of other employees' requests for religious exemptions:

> "*Thank you for submitting your request for religious exemption. The information you provided was carefully considered. While this may not be the news you were hoping to receive, your religious accommodation has not been approved. Based on the information provided, your request did not meet the criteria for a religious exemption accommodation.*"

41.     Defendant conducted no case-by-case analysis or individualized interactive process to discuss Plaintiff Kiel's exemption request or possible accommodation of her religious objections to the Covid-19 vaccine. In response to requests for explanation or

information, Defendant Mayo wrote: "*HR is not able to share what criteria was used to review/approve the exemption. A small team of employees reviewed each request and based on what was provided to them from each individual employee is what was used in the approval/denial decision*."

42.     Rather than engage in a legitimate interactive process, respect the sincerity of plaintiff's religious beliefs, or attempt reasonable accommodation, Defendant Mayo used more boilerplate language to justify its pre-determined result:

> "<u>*Generally*</u>*, denials occur because the requestor has not clearly stated their sincerely held belief, demonstrated it is a sincerely and consistently held belief, and/or clearly defined the conflict between their religious belief and receiving the COVID-19 vaccine*."

43.     Defendant Mayo actually specifically disavowed an individual interactive process by writing: "Specific feedback on individual requests will not be provided," and "it is not possible to provide individual feedback."

44.     Plaintiff Kiel sought further clarification of Defendant Mayo's criteria for determining whether Plaintiff's religious belief constituted a "sincerely held religious belief."  However, Defendant refused to respond this individual request for clarification and simply gave the generalized, identical language in the letters.

45.     In its form denial letters, Defendant Mayo announced that it would accept appeals     of its uniform denial decisions. "*If you would like to submit additional clarifying information, you may submit a reconsideration request here*."

46.     Plaintiff Kiel took advantage of that process and submitted additional information supporting her request for exemption.

47.     Following this request for reconsideration, however, Defendant Mayo again issued identical denial letters to nearly every employee who appealed.  The transmittal email messages stated: "Unfortunately, the additional information you provided did not change the outcome as it did not meet the criteria for a religious accommodation."  Again, no interactive process was used to evaluate the requests for exemptions.

48.     Defendant Mayo did not provide information about its process for determining whether the employees sincerely held religious beliefs would be accommodated either.

49.     Both the original denial of the religious exemption and the denial of the requests for reconsideration contained this warning at the bottom: "Do not disseminate, distribute, forward, or copy the content of this notification."

50.     Defendant Mayo staff were further instructed to "endorse the vaccine or say nothing."

51.     Defendant Mayo terminated Plaintiff Kiel' employment on January 3, 2022 based on her refusal to obtain a Covid-19 vaccine.

52.     Plaintiff Kiel submitted good-faith statements of her sincerely-held religious beliefs, with explanations of how her faith constrained her from accepting the Covid-19 vaccination.  Defendant Mayo's ad hoc panel nevertheless denied Plaintiff Kiel's request for an exemption and made no effort to accommodate her request for a religious exemption.  Defendant Mayo did not consider allowing Plaintiff to be

accommodated by simply continuing to do her job as she had been doing it for over one and one-half years prior to the Vaccine Mandate.

53.     Defendant Mayo employed Plaintiff Kiel as a licensed practical nurse in the Family Medicine department.  In her work as a licensed practical nurse, one of Plaintiff Kiel's job duties as a licensed practical nurse was to review on Defendant Mayo's computer system incoming messages from patients received either by phone or a message portal the patients could use and respond to these messages.  On average, Plaintiff Kiel, as well as the other licensed practical nurses and certified medical assistants, would spend 25%-30% of her time accessing these messages and responding to these messages because of the volume of messages coming into the system each day.  All of this type of work could have been done remotely by Plaintiff Kiel.

54.     During the Covid-19 pandemic, Defendant Mayo had told its licensed practical nurses, including Plaintiff Kiel, that one of the options Defendant Mayo was considering for continuing to work with patients during the pandemic was to have licensed practical nurses meet with patients remotely (for instance, via "Zoom") or communicate with the patients by phone.  One accommodation Defendant Mayo could have made with Plaintiff Kiel would be to have her work remotely by responding to patient messages 100% of the time.  On average, Defendant Mayo had approximately 15-20 licensed practical nurses or certified medical assistants working at the Owatonna facility each day and those licensed practical nurses and certified medical assistants would also spend approximately 30% of their time responding to patient messages.  Therefore, Plaintiff Kiel could have devoted 100% of her time to accessing these

12

messages remotely from her computer at home and responding to the messages without causing Defendant Mayo any hardship much less undue hardship.

55.     Plaintiff Kiel also had contracted Covid-19 prior to Defendant Mayo implementing its Vaccine Mandate.  In December, 2020, Plaintiff Kiel had her blood tested for Covid-19.  The test result was positive for Covid-19 meaning that Plaintiff Kiel had immunity from Covid-19.  Plaintiff Kiel attempted to show these results to Defendant Mayo but Defendant Mayo refused to consider the results.

56.     Defendant Mayo did grant religious exemptions to some of its employees. However, those employees were required to undergo weekly testing for the Covid-19 virus.  If the religiously exempt employee tested positive for Covid-19, the employee would be required to quarantine from Defendant Mayo for a specified period of time (14 days) before the person could return to work.  Plaintiff Kiel was not offered this testing program.  However, even if Plaintiff Kiel had been offered this testing program, Plaintiff Kiel would have been required to quarantine for 14 days and then could have returned to work.

57.     Defendant issued the Vaccine Mandate mandating its employees, including Plaintiff, take the Covid-19 vaccine despite accumulating evidence that the Covid-19 vaccine does not provide protection as long lasting as had been previously represented, does not prevent infection or transmission, but only allegedly reduces the severity of Covid-19 if a person contracts Covid-19.  Dr. Deborah Birx, the former White House Covid Response Coordinator, stated in July 2022: "I knew these vaccines were not going to protect against infection.  And I think we overplayed the vaccines …".  Separately Dr.

Birx also stated: "When we make broad statements, when we say to people that these vaccines are going to protect against infection – one, it wasn't studied, …".  Dr. Birx made her statements in July 2022, approximately one year after President Biden stated: "If you get vaccinated, you won't get Covid."

58.     While many claimed that the Covid-19 pandemic was a pandemic of the unvaccinated, now the majority of people with Covid-19 were vaccinated to one extent or another.

59.     A very recent study indicates that people who took the Covid-19 vaccine are actually more likely to be hospitalized than people with natural immunity.

60.     The numbers of patients hospitalized because of Covid-19 positive status has also been overstated because many were hospitalized for other causes, not because of Covid-19.

61.     Similarly, the numbers of people who were counted as having died from Covid-19 were overstated because many of them died with Covid-19, not from Covid-19.

62.     The numbers of Covid-19 deaths were also overstated by upwards of 25%, or even more.

63.     Dr. Deborah Birx stated "[b]ut let's be very clear: 50% of the people who died from the Omicron surge were older, vaccinated."

64.     Thus, the extent of Covid-19 infections, the severity of the Covid-19 infection, the efficacy of the vaccines, and the time-length of vaccine protection may all have been overstated, contributing to an over exuberance in mandating vaccines, and punishing the unvaccinated, as Defendant has done as set forth above.

65.     Additionally, Plaintiff Kiel had Covid-19 and recovered, which gave her natural immunity.  Natural immunity has long been recognized in the scientific and medical communities.  While Defendant Mayo has acknowledged that natural immunity will prevent someone from contacting a disease from which they have recovered, Defendant Mayo pled ignorance as to how long natural immunity will last for Covid-19 stating that: "duration of immunity after COVID-19 infection is not known."  Defendant Mayo has allowed "employees with recent Covide-19 infections to defer vaccination for 90 days."  As a result, Defendant Mayo is either admitting that natural immunity lasts at least 90 days, or Defendant Mayo is admitting that there are dangers to receiving the vaccine less than 90 days from the time of infection.

66.     In fact, early on in the Covid-19 pandemic, and before any vaccines were available, Defendant Mayo provided free testing to determine "how many Mayo Clinic staff have developed antibodies against SARS-Co-V-2."

67.     Rather than disclosing the results of its determination on the numbers of Defendant Mayo "staff" that "have developed antibodies against SARS-Co-V-2," or disclosing studies on the "duration of immunity after Covid-19," (which some studies have asserted are many times more effective than vaccine immunity), Defendant Mayo has not made public this information and instead issued its Vaccine Mandate.

68.     The State of Minnesota ceased to be under a state-declared "emergency" over three months before Defendant Mayo instituted its Vaccine Mandate, as Governor Timothy Walz officially ended the State's emergency effective June 30, 2021.

15

69.     On March 8, 2022, Defendant Mayo announced it would suspend the testing program portion of its Vaccine Mandate.  As a result, Defendant Mayo's remaining unvaccinated employees are now treated similarly to vaccinated employees, but Plaintiff was treated discriminatorily.

70.     After terminating the Plaintiff Kiel, Defendant Mayo suspended weekly testing effective March 14, 2022, which means that those (like Plaintiff Kiel) who refused weekly testing and were terminated between January 2022 and March 14, 2022, would no longer be forced to test weekly, and would no longer be terminated for objecting to testing, which Defendant Mayo has now determined is unnecessary.

71.     The following seriatim list of facts which have been gathered by the Plaintiff group suing Defendant Mayo which cast doubt on the legitimacy of the exemption process are as follows:

- The exemption process, and particularly the appeal process were under an unnecessary short timeframe negatively affecting the quality of the exemption submissions.  The reason why the unnecessary shortness of the timeframe was that Delta and Omicron were dominant variants in October 2021/January 2022, and the Defendants and the CDC were aware that the Vaccine did not materially prevent infection, or transmission of those Covid-19 variants during that time period.
- The antibody testing to determine prior Covid-19 infection, and infection resistance that the CDC determined was many times superior to vaccinated immunity was terminated over the objection of the workforce, and demonstrated that the purpose of the vaccine mandate was not to further patient safety.  The refusal to acknowledge that covid recovered immunity was superior to vaccinated immunity demonstrated that the process was not created with patient safety being a primary concern.
- Defendant Mayo terminated a mother of two daughters who introduced her daughters to their religious faith, while granting the religious exemptions of her lower paid daughters.
- Defendant Mayo terminated numerous spouses who went to church with their fellow spouse while granting the religious exemption of the other

16

spouse, and in one such instance, and on information and belief, their exemption requests contained *the exact same language*.

- Defendant Mayo terminated some parishioners at a parish while granting the religious exemptions of others who attended the exact same parish.
- Defendant Mayo's lack of an interactive process favored superior writers over inferior writers, something which has absolutely no bearing on the sincerity of an exemption proponent's religious faith.
- Workers who were working remotely during their entire tenure who were absolutely no risk to their colleagues, or patients were terminated, direct evidence that the entire exemption process was absurd and conducted in bad faith.
- Within two months of terminating Plaintiff, Defendant Mayo was again hiring unvaccinated employees, demonstrating further that the purported reasons for the vaccine mandate were not patient safety and that the stated reasons for Plaintiff's termination were a pretext.

## FIRST CAUSE OF ACTION

### Religious Discrimination and Failure to Accommodate under
### Title VII of the Civil Rights Act of 1964

72.     Plaintiff restates and realleges the previous paragraphs as if fully set-forth herein.

73.     Defendant Mayo is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

74.     Plaintiff Kiel is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

75.     Plaintiff Kiel has a sincerely held religious belief which prevented her from receiving the vaccine.  Plaintiff Kiel's beliefs arise because of her Christian beliefs.

76.     Plaintiff Kiel informed Mayo of the conflict between her religious belief and the Vaccine Mandate.

77.     Title VII of the Civil Rights Act prohibits discrimination on the basis of religion. Id. § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs. Id. § 2000e(j).

78.     The Act prohibits Defendant Mayo from scrutinizing what it believes to be the sincerity of Plaintiff's religious beliefs, or whether Plaintiff's exercise of her beliefs is logical or as consistent as Defendant Mayo believes those religious beliefs should be.

79.     Guidance issued by the Equal Employment Opportunity Commission and decisions of the federal courts require that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of undue hardship or "direct threat" by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

80.     In response to the Plaintiff Kiel's request for reasonable accommodation of her sincerely-held religious beliefs, Defendant Mayo and its ad hoc panel applied a uniform, blanket rule in rejecting nearly all, in violation of both Title VII and the EEOC's persuasive guidance on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

81.     Despite the Plaintiff Kiel's consistent requests for Defendant Mayo to engage in an interactive process regarding her request for accommodation, Defendant Mayo refused throughout to engage in the interactive process and instead rejected Plaintiff  Kiel's request for an exemption for identical reasons as other Defendant Mayo employees using an identical form letter.

82.    As set forth above, Defendant Mayo could have accommodated Plaintiff Kiel's request for a religious exemption without suffering any undue hardship by having her work remotely, or simply continuing to work as she had been for the last one and one-half years of her employment.

83.    Defendant Mayo's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of 42 U.S.C. §§ 2000(e)-2 and 2000(e)(j).

84.    Because of Defendant Mayo's unlawful actions, Plaintiff Kiel suffered and continues to suffer economic and other damages in amounts to be proven  at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION
### State law religious discrimination claim under MHRA, Minn. Stat. § 363A.08

85.    Plaintiff restates and realleges the previous paragraphs as if fully set-forth herein.

86.    Minn. Stat. § 363A.01, et seq prohibits discrimination in employment based on religion.

87.    Defendant Mayo is an "employer" within the  meaning of Minn. Stat. § 363A.01.

88.    Plaintiff Kiel is an "employee" within the meaning of Minn. Stat. § 363A.01.

89.    Plaintiff Kiel has a sincerely held religious belief which prevented her from receiving the Covid-19 vaccine.

19

90.     Plaintiff Kiel informed Defendant Mayo of the conflict between her religious belief and the Vaccine Mandate.

91.     Minn. Stat. § 363A.01 et seq prohibits discrimination on the basis of religion and further requires covered employers to respect their employees' sincerely held religious beliefs.

92.     Minn. Stat. § 363A.01 et seq prohibits Defendant Mayo from scrutinizing what it believes to be the sincerity of Plaintiffs' religious beliefs, or whether Plaintiffs' exercise of their beliefs is logical or as consistent as Defendant believes they should be.

93.     In response to the Plaintiff Kiel's request for respect of her sincerely-held religious beliefs, Defendant Mayo and its ad hoc panel applied a uniform, blanket rule in rejecting Plaintiff's request for a religious exemption. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage, evidencing discriminatory intent.

94.     Despite Plaintiff Kiel's request for Defendant Mayo to engage in dialogue, Defendant Mayo refused throughout to engage in the interactive process, and instead rejected Plaintiff Kiel's request for generalized reasons, using an identical form letter, and terminated Plaintiff Kiel.

95.     Defendant Mayo's actions constitute discrimination on the basis of religion in violation of Minn. Stat. § 363A.01 et seq.

96.     Because of Defendant Mayo's unlawful actions, Plaintiff Kiel has suffered and continues to suffer economic and other damages in amounts to be proven  at trial,

including front pay, back pay, emotional distress damages, compensatory damages,

punitive damages, and attorney fees in excess of $75,000.

### THIRD CAUSE OF ACTION

**Discrimination and Failure to Accommodate under the Americans
with Disabilities Act, 42 U.S.C. § 12101 et seq.**

97.     Plaintiff Kiel restates and realleges the previous paragraphs as if fully set-

forth herein.

98.     Defendant Mayo is an "employer" within the meaning of 42 U.S.C. §

12111(5)(A).

99.     Plaintiff Kiel is an "employee" within the meaning of 42 U.S.C. §

12111(4).

100.    The Americans with Disabilities Act at 42 U.S.C. § 12112 (d)(4)(a)

prohibits employers from requiring current employees to undergo medical examinations

or inquires unless it is job related and consistent with business necessity.

101.    Defendant Mayo's Vaccine Mandate violated 42 U.S.C. § 12112 (d)(4)(a),

by requiring its employees to undergo weekly testing.  Defendant Mayo's Vaccine

Mandate policy requirement to undergo weekly Covid-19 testing was neither job related

nor consistent with business necessity. Since the Covid-19 vaccine did not prevent

infection or transmission of Covid-19 by the vaccinated, particularly the dominant Delta

and Omicron variants at the time of Plaintiff's termination, the discrimination between

the vaccinated and the unvaccinated violated the ADA.

102.    As a result of Defendant Mayo's wrongful actions, Plaintiff Kiel suffered

and continues to suffer economic and other damages in amounts to be proven at trial,

including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FOURTH CAUSE OF ACTION
### Breach of Contract/Promissory Estoppel

103.    Plaintiff Kiel restates and realleges the previous paragraphs above as if fully set-forth herein.

104.    Defendant Mayo had a policy of honoring diversity, equity and inclusion, including the protection of the religious rights of its employees.

105.    Defendant Mayo wrote that it "is committed to upholding laws prohibiting discrimination and/or harassment on the basis of race, color, creed, religion, gender, age, national origin, marital status, sexual orientation, veteran's status, disability, or status with regard to public assistance." (emphasis added).

106.    Defendant Mayo's policies and statements created a contract between it and its employees.

107.    Defendant Mayo's actions in terminating Plaintiff Kiel, discriminating against her on the basis of her religious beliefs, constitutes a breach of that contract.

108.    Plaintiff Kiel has been damaged by Defendant Mayo's breach of contract.

109.    In the alternative, Defendant Mayo's promises to its employees, both written and verbal, created an expectation on which the employees, including Plaintiff Kiel, relied to her detriment. Defendant Mayo's promises to its employees, including Plaintiff Kiel, should be enforced to avoid injustice.

**JURY DEMAND**

Plaintiff Kiel demands a trial by jury on all claims and issues for which they have a right to trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff above-named prays for judgment in her favor and against Defendant Mayo and for an Order of the Court as follows:

1. Adjudging that Defendant is liable to Plaintiff for her actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2. Enjoining Defendant from taking further illegal action against Plaintiff in violation of both state and federal law, and Ordering Defendant to take action to restore Plaintiff to her positions they would have enjoyed absent Defendant's illegal conduct;

3. Awarding Plaintiff her costs, attorney fees, prejudgment interest, and any other relief permitted by statute; and

4. Awarding such other relief as the Court may deem just and equitable, including, without limitation, an injunction prohibiting differences in treatment between the

vaccinated and unvaccinated which do not have a scientific basis.

Dated: September 22, 2022

*s/Gregory M. Erickson*
Gregory M. Erickson, 276522
Vincent J. Fahnlander, 19220X
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: fahnlander@mklaw.com
*Attorneys for Plaintiffs*