UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Sherry Ihde,

           Plaintiff,

    v.

The Mayo Clinic,

           Defendant,

Court File No. 0:22-cv-01327-JRT-ECW

**JURY TRIAL DEMANDED**

Shelly Kiel,

           Plaintiff,

    v.

Mayo Clinic Health System Southeast
Minnesota,

           Defendant,

Court File No. 0:22-cv-01319-JRT-ECW

Anita Miller,

           Plaintiff,

v.

The Mayo Clinic Hospital – Rochester, a
Minnesota non-profit corporation,

           Defendant,

Court File No. 0:22-cv-01405-JRT-ECW

Kenneth Ringhofer,

           Plaintiff,

v.

Mayo Clinic Ambulance; a Minnesota
nonprofit corporation,

           Defendant,

Court File No. 0:22-cv-01420-JRT-ECW

Kristin Rubin,                                   Court File No. 0:22-cv-01427-JRT-ECW
                                    Plaintiff,

v.

The Mayo Clinic; a Minnesota non-profit
corporation,

                                    Defendant.

## DEFENDANTS' CONSOLIDATED
## MEMORANDUM OF LAW SUPPORTING THEIR
## RULE 12(b)(6) MOTIONS TO DISMISS THE AMENDED COMPLAINTS

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................................. 1

FACTS RELEVANT TO IHDE, RUBIN, KIEL, MILLER, AND RINGHOFER .......... 5

    A.    Mayo Announces Its Vaccine Policy. .......................................... 5

    B.    The CMS Mandate. ................................................................ 6

FACTS SPECIFIC TO IHDE, KIEL, MILLER, RINGHOFER, AND RUBIN .............. 7

    A.    *Plaintiff Ihde: Granted Exemption But Refused Weekly Testing.* ............. 7

    B.    *Plaintiff Rubin: Granted Exemption But Refused Weekly Testing.* ............. 8

    C.    *Plaintiff Kiel: Failed to Qualify for Vaccine Policy Exemption.* ............. 9

    D.    *Plaintiff Miller: Failed to Qualify for Vaccine Policy Exemption.* ........... 10

    E.    *Plaintiff Ringhofer: Failed to Qualify for Vaccine Policy Exemption.* ....... 12

STANDARD OF REVIEW ................................................................... 13

ARGUMENT ..................................................................................... 15

I.    ALL PLAINTIFFS' RELIGIOUS DISCRIMINATION AND
    ACCOMMODATION CLAIMS FAIL................................................ 15

    A.    Ihde and Miller Fail to Plead Plausible Claims Related to their
        Terminations Because they Failed to Exhaust their Administrative
        Remedies. ........................................................................... 16

    B.    Count 1 Fails Because Each Plaintiff Has Failed to Sufficiently
        Plead Religious Discrimination/Failure to Accommodate....................... 18

        1.    Plaintiffs Ihde and Rubin have not pleaded their objections to
            testing are religious in nature, have not pleaded a conflict
            between religious beliefs and testing, and are not entitled to
            the accommodation of their choice. .................................. 19

            a.    Neither Ihde nor Rubin has pleaded the existence of a
                sincerely held religious belief about COVID testing................... 20

# TABLE OF CONTENTS

(CONTINUED)

PAGE

       b.    Neither Ihde nor Rubin has plausibly alleged a conflict between their religious beliefs and Mayo's Policy. ..................... 22

       c.    Ihde and Rubin are not entitled to the accommodation of their choice. ................................................................................. 23

    2.    Plaintiffs Kiel, Miller, and Ringhofer have not plausibly pleaded that their objections to the vaccine requirement are religious in nature, that Mayo knew about their religious beliefs, and that a conflict exists between their religion and the Policy. ................................................................................. 23

       a.    Neither Kiel, Miller, nor Ringhofer have pleaded facts supporting a sincerely held religious belief. ............................... 23

       b.    Neither Kiel, Miller, nor Ringhofer has plausibly alleged they informed Mayo about their sincerely held religious beliefs. ......................................................................................... 25

       c.    Neither Kiel, Miller, nor Ringhofer plausibly alleged that their religious beliefs conflict with the Policy. ............................ 26

    3.    All Plaintiffs failed to plead facts supporting an inference of religious discrimination and likewise failed to plead a causal connection between their protected status and subsequent terminations. .................................................................................. 28

       a.    All Plaintiffs failed to plausibly allege they were treated differently from non-Christian employees. .................................. 29

       b.    All Plaintiffs failed to plead a causal connection between their protected status and terminations. ....................................... 29

 C.    Count 2 Fails as to Plaintiffs Ihde and Kiel, Because They Have Not Exhausted Their Administrative Remedies before the MDHR, and Fails as to All Plaintiffs for the Same Reasons Count I Fails. ................... 31

II.    ALL PLAINTIFFS' ADA CLAIMS IN COUNT III OF THE AMENDED COMPLAINTS SHOULD BE DISMISSED. ....................................................... 31

 A.    Three Plaintiffs—Kiel, Miller, and Ringhofer—Failed to Exhaust their Administrative Remedies. .................................................................. 32

# TABLE OF CONTENTS
(CONTINUED)

B.    All Five Plaintiffs Have Failed to Adequately Plead the Elements of an ADA Failure-to-Accommodate Claim. ................................................. 33

C.    All Five Plaintiffs Have Failed to Properly Plead a Violation of the ADA's Prohibition Against Medical Examinations and Inquiries............ 34

1.    Plaintiffs Ihde and Rubin (who refused testing) fail to state a claim under the ADA related to medical examinations and inquiries. ....................................................................................... 34

2.    Plaintiffs Kiel, Miller, and Ringhofer (all who refused to vaccinate) fail to state an ADA claim concerning prohibited medical examinations and inquiries. ............................................... 35

III.    COUNT 4 OF ALL PLAINTIFFS' AMENDED COMPLAINTS, ALLEGING BREACH OF CONTRACT AND PROMISSORY ESTOPPEL, FAIL. .................................................................................... 36

A.    Plaintiffs Have Not Pleaded a Viable Unilateral Contract. ........................ 37

B.    Plaintiffs Have Not Pleaded a Viable Promissory Estoppel Claim............ 38

IV.    PLAINTIFFS' PUNITIVE DAMAGES REQUEST SHOULD BE STRICKEN................................................................................................. 40

A.    Plaintiffs Have Not Plausibly Alleged They Are Entitled to Punitive Damages Under Title VII or the ADA. ...................................................... 40

B.    Plaintiffs' Punitive Damages Related to Their MHRA Claims is Premature................................................................................................... 41

C.    Plaintiffs Have Not Established Their Right to Assert Punitive Damages under the MHRA, as Required by Minn. Stat. § 549.20. ........... 42

CONCLUSION .............................................................................................. 42

**INTRODUCTION**

The SARS-CoV-2 ("COVID-19") virus upended the world in March 2020.[1] Mayo Clinic, Mayo Clinic Ambulance, Mayo Clinic Hospital – Rochester, and Mayo Clinic Health System Southeast Minnesota's (collectively "Mayo") patients' needs come first, and Mayo has worked tirelessly to protect them, its employees, and the community against this deadly virus.

Science and data confirm COVID-19 vaccinations prevent hospitalizations and save lives. After safe, effective vaccines became available, Mayo adopted a Vaccine Policy in October 2021 to keep its patients, workforce, and the community safe. The Policy requires employees to be vaccinated but allows exemptions for disabilities, sincerely held religious beliefs, and medical contraindications. If an employee demonstrates the right to an exemption, the employee must still use safety precautions, including, at the time the Policy was adopted, masking and testing. Mayo granted a majority of medical and religious exemption requests received. Mayo stands firmly behind the evidence supporting the efficacy and safety of COVID-19 vaccines to protect the health and safety of its patients, workforce, visitors, and communities.

Plaintiffs Sherry Ihde, Shelly Kiel, Anita Miller, Kenneth Ringhofer, and Kristin Rubin (collectively "Plaintiffs") each filed an Amended Complaint containing four

---

[1] According to the CDC, there have been almost 95 million COVID-19 cases in the United States and more than one million attributable deaths. *Case, Death, & Laboratory Testing Trends by Location*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://covid.cdc.gov/covid-data-tracker/#cases-deaths-testing-trends (last visited Nov. 30, 2022).

counts.  Mayo moves to dismiss each count pursuant to Federal Rule of Civil Procedure 12(b)(6) because each Plaintiff fails to state a claim upon which relief may be granted, as described in the overview below.

### Two Plaintiffs, Ihde and Rubin were granted religious exemptions to vaccination but refused weekly testing; each fails to state a claim, as follows:

Plaintiffs Ihde and Rubin both sought and were granted an exemption from the vaccine requirement based on their individually professed religious beliefs. As an accommodation, the Policy required Ihde and Rubin to test weekly. Ihde and Rubin each requested a testing exemption. Mayo reviewed and denied their respective requests. Ihde and Rubin each refused to test per the Policy, and as a result, Mayo terminated their employment. Their Amended Complaints (and each of their Counts) should be dismissed because:

- Count 1: Title VII, Religious Discrimination – Failure to Accommodate and Disparate Treatment.  Ihde's Count I fails because she never exhausted her claim that Mayo discriminated against her based on her religion by terminating her employment. Both Ihde and Rubin's Count 1 also fails because Ihde and Rubin do not plausibly allege they had sincerely held religious beliefs that conflict with the Policy's testing requirements. Nor did they adequately plead facts supporting disparate treatment or a causal connection between their protected status and termination.

- Count 2: MHRA – Religious Discrimination. Ihde's Count 2 fails because she filed an MDHR Charge but does not allege the MDHR issued its

2

closure notice and therefore has not fully exhausted her administrative remedies before the MDHR. Additionally, Count 2 as alleged by both Ihde and Rubin fails for the same substantive reasons Count 1 fails.

- <u>Count 3: ADA – Discrimination and Failure-to-Accommodate</u>. Ihde and Rubin did not exhaust their administrative remedies under the ADA as to their failure-to-accommodate claim. In addition, Ihde and Rubin have not plausibly pleaded claims of disability discrimination or failure to accommodate, or that Mayo subjected them to an unlawful medical examination or inquiry.

- <u>Count 4: Breach of Contract and Promissory Estoppel</u>.   Neither Ihde nor Rubin has pleaded a proper unilateral contract to plausibly allege a breach of contract; alternatively, they each fail to plausibly allege a "clear and definite promise" to support a viable promissory estoppel claim.

**Three additional Plaintiffs (Kiel, Miller, and Ringhofer) were not able to support requests for religious exemptions from the Policy; they each fail to state claims upon which relief may be granted as follows:**

Kiel, Miller, and Ringhofer each allege they are Christian and requested religious exemptions from the Policy. Mayo reviewed and denied their requests. Because they did not receive exemptions and refused to vaccinate, Mayo terminated their employment. Each Count of their Amended Complaints should be dismissed because:

- <u>Count 1: Title VII, Religious Discrimination – Failure to Accommodate and Disparate Treatment</u>.   Miller's Count I fails because she never

exhausted her claim that Mayo discriminated against her based on her religion by terminating her employment. Kiel, Miller, and Ringhofer's allegations under Count I also fail to meet Rule 12(b)(6)'s standards because none of them plausibly alleged their vaccine objections are religious in nature and conflict with vaccination. Nor have they plausibly alleged to have informed Mayo about a conflict between sincerely held religious beliefs and Mayo's Policy.  Nor did any of them adequately plead facts suggesting disparate treatment or a causal connection between religious beliefs and termination.

- <u>Count 2: MHRA – Religious Discrimination</u>. Kiel's Count 2 fails because Kiel filed an MDHR Charge yet fails to allege MDHR issued its closure notice, so she has not fully exhausted her administrative remedies. Kiel, Miller, and Ringhofer's Count 2 also fails for the same substantive reasons as their Title VII claims.

- <u>Count 3: ADA – Discrimination and Failure to Accommodate</u>. Neither Kiel, Miller, nor Ringhofer filed charges alleging ADA discrimination; they failed to exhaust administrative remedies. Kiel, Miller, and Ringhofer have not plausibly pleaded claims for relief. Nor have they established that Mayo subjected them to an unlawful medical examination or inquiry.

- <u>Count 4: Breach of Contract and Promissory Estoppel</u>. Neither Kiel, Miller, nor Ringhofer has pleaded a proper unilateral contract to plausibly allege a

breach of contract; or alternatively, each failed to plausibly allege a "clear and definite promise" to support a viable promissory estoppel claim.

The Court should dismiss, with prejudice, the Amended Complaints of Plaintiffs Ihde, Rubin, Kiel, Miller, and Ringhofer.

## FACTS RELEVANT TO IHDE, RUBIN, KIEL, MILLER, AND RINGHOFER[2]

### A.    Mayo Announces Its Vaccine Policy.

Mayo adopted its Policy in October 2021. (McNee Decl. ("McNee"), Exs. 1–5, Am. Compls. ¶ 1.)[3] Under the Policy, "All employees must be fully vaccinated or receive an approved medical or religious exemption." (McNee Ex. 6, at 1.) Employees could choose between three COVID-19 vaccines. (*Id*. at 2–3.)

The Policy allows for exemptions to accommodate employees with disabilities or sincerely held religious beliefs conflicting with vaccination. (*Id*. at 1.) Employees granted an exemption were not required to be vaccinated, but had to follow other safeguards, including weekly testing for some. (*Id*. at 1–2.)

If an employee refused vaccination and did not obtain an exemption, the Policy called for corrective action, including termination. (*Id*. at 2.) If Mayo granted an

---

[2] Mayo states the facts as alleged in the Amended Complaints. When a fact is pleaded at the same paragraph in each Amended Complaint for all five cases, it is cited as "Am. Compls."

[3] The Court may consider the Policy because the Amended Complaints explicitly embrace it. (Am. Compls. ¶¶ 1–2.) Indeed, "[t]he court may consider, in addition to the pleadings, materials 'embraced by the pleadings' and materials that are part of the public record" without converting the motion into a motion for summary judgment. *In re K-Tel, Int'l, Inc. v. Secs. Lit.*, 300 F.3d 881, 889 (8th Cir. 2002); *Mattes v. ABC Plastics, Inc*., 323 F.3d 695, 697 n.4 (8th Cir. 2003); *Hile v. Jimmy Johns Highway 55*, 899 F. Supp. 2d 843, 847 (D. Minn. 2012).

exemption but the employee did not comply with the weekly testing requirement, the Policy also called for corrective action, including termination. (*Id.*)

### B.   The CMS Mandate.

On November 5, 2021, the U.S. Department of Health and Human Services Center for Medicare and Medicaid Services issued the "CMS Omnibus COVID-19 Health Care Staff Vaccination Interim Final Rule," (the "CMS Mandate") requiring certain healthcare facilities to ensure covered staff are vaccinated against COVID-19. 86 Fed. Reg. 61555–61627 (2021). The Supreme Court upheld the CMS Mandate in January 2022. *Biden v. Missouri,* 595 U.S. __, 142 S.Ct. 647 (2022). The Court deferred to the CMS Secretary's findings that "vaccination of healthcare workers against COVID-19 was 'necessary for the health and safety of individuals to whom care and services are furnished.'" *Id.* at 651. The Court noted COVID-19 "can spread rapidly among healthcare workers and from them to patients," which is "more likely when healthcare workers are unvaccinated." *Id.* As the Supreme Court noted, "ensuring that providers take steps to avoid transmitting a dangerous virus to their patients is consistent with the fundamental principle of the medical profession: first, do no harm. It would be the 'very opposite of efficient and effective administration for a facility that is supposed to make people well to make them sick with COVID-19.'" *Id.* at 652.

The CMS Mandate allows institutions to provide religious and ADA exemptions, 86 Fed. Reg. at 61572, but cautions not to simply rubber stamp accommodation requests: "CMS believes that exemptions could be appropriate in *certain limited circumstances,* but no exemption should be provided to any staff for whom it is not legally required or

who requests an exemption solely to evade vaccination.". *External FAQ: CMS Omnibus COVID-19 Health Care Staff Vaccination Interim Final Rule*, CENTERS FOR MEDICARE & MEDICAID SERVICES https://www.cms.gov/files/document/cms-omnibus-covid-19-health-care-staff-vaccination-requirements-2021.pdf (last visited Nov. 30, 2022) (emphasis added). Employers must also "ensure that they minimize the risk of transmission of COVID-19 to at-risk individuals, in keeping with their obligation to protect the health and safety of patients." *Id.*

## FACTS SPECIFIC TO IHDE, KIEL, MILLER, RINGHOFER, AND RUBIN

### A.    *Plaintiff Ihde: Granted Exemption But Refused Weekly Testing.*

Ihde worked as a supervisor in Mayo's Bacteriology Lab. (McNee Ex. 1, Ihde Am. Compl. ¶ 13.) Ihde requested a religious exemption from vaccination, which Mayo approved in November 2021. (*Id.* ¶ 36.)

In January 2022, Ihde sought an exemption from weekly testing. (*Id.* ¶ 41.) Mayo reviewed and denied her request based on documentation she submitted. (*Id.* ¶¶ 42–45.) Ihde requested reconsideration, and Mayo again reviewed and denied her request. (*Id.* ¶ 44) Ihde was placed on administrative leave, but because she refused weekly testing, Mayo terminated her employment on February 21, 2022. (*Id.* ¶¶ 44–46.)

Ihde filed her first Charge on February 4, 2022, with the EEOC and MDHR, alleging religious discrimination related to the denial of an accommodation for weekly testing; Ihde alleged nothing about Mayo terminating her employment (because her employment had not yet ended). (Ihde Am. Compl. ¶ 6; McNee Ex. 7, at 1.) On February 16, 2022, Ihde received a Right-to-Sue Notice from the EEOC. (Ihde Am. Compl. ¶ 6;

McNee Ex. 8.) Ihde does not allege that MDHR issued a closure notice, nor has Mayo received one. (*See generally* Ihde Am. Compl.)

Ihde filed a second Charge on May 16, 2022 with the EEOC and MDHR, alleging age and disability discrimination relating to termination, for which the EEOC issued a Right-to-Sue Notice on May 18, 2022. (Am. Compl. ¶ 6; McNee Exs. 9–10.) Ihde's second Charge does not allege religious discrimination. (*Id*. Ex. 9.) On May 18, 2022, Ihde received a Right-to-Sue Notice from the EEOC. (*Id*. Ex. 10.) Ihde's Amended Complaint alleges facts regarding her Christian beliefs, her request for religious exemption, and her legal conclusions that Mayo discriminated against her based on religion. (*Id*. ¶¶ 4, 14–17, 85, 92, 100.)

**B.**   ***Plaintiff Rubin: Granted Exemption But Refused Weekly Testing.***

Rubin worked for Mayo as a CT technologist. (McNee Ex. 5, Rubin Am. Compl. ¶ 10.) Rubin requested a religious exemption from vaccination, which Mayo approved in November 2021. (*Id*. ¶ 37.)

In January 2022, Rubin sought an exemption from weekly testing. (*Id*. ¶ 39.) Mayo reviewed and denied her request based on documentation she submitted. (*Id*. ¶¶ 40–41.) Because Rubin refused weekly testing, Mayo terminated her employment on February 18, 2022. (*Id*. ¶ 12.)

On February 23, 2022, Rubin filed a Charge with the EEOC and the MDHR, alleging religious discrimination related to the denial of a religious accommodation for weekly testing and termination. (*Id*. ¶ 12; McNee Ex. 23.) Her Charge alleged she requested a religious accommodation from weekly testing and Mayo reviewed and denied

her request. (*Id*.) On February 25, 2022, the EEOC issued a Right-to-Sue Notice at Rubin's request. (Rubin Am. Compl., ¶ 12; McNee Ex. 24.)

On April 27, 2022, Rubin filed a second Charge with the EEOC and MDHR, alleging disability discrimination. (McNee Ex. 25.) On April 29, 2022, the EEOC issued a Right-to-Sue Notice at Rubin's request. (*Id*. Ex. 26.)

Rubin's Amended Complaint alleges facts regarding her Christian beliefs, her request for religious exemption, and her legal conclusions that Mayo discriminated against her based on religion. (Rubin Am. Compl. ¶¶ 10–11, 34–36, 69, 76, 84.)

### C.   *Plaintiff Kiel: Failed to Qualify for Vaccine Policy Exemption.*

Kiel worked for Mayo as a Licensed Practical Nurse. (McNee Ex. 2, Kiel Am. Compl. ¶ 53.) Kiel requested a religious exemption from vaccination. (*Id*. ¶ 12.) Mayo reviewed and denied her request and subsequent appeal. (*Id*.) Kiel continued to refuse to take the COVID-19 vaccines. (*Id*. ¶ 51.) Consistent with the Policy, Mayo terminated Kiel's employment on January 3, 2022. (*Id*.)

Kiel filed a Charge on January 10, 2022, with the EEOC and MDHR, alleging religious discrimination regarding the denial of a religious accommodation from vaccination and her termination of employment. (*Id*. ¶ 3; McNee Ex. 11.) Her Charge alleges that she had a sincerely held religious belief that conflicted with the Policy, that she requested a religious accommodation, and that Mayo reviewed and denied this request. (*Id*.) Kiel did not assert a disability discrimination or failure-to-accommodate claim. (*Id*.) On February 15, 2022, the EEOC issued a Right-to-Sue Notice. (Kiel Am.

9

Compl. ¶¶ 3, 14; McNee Ex. 12.) Kiel does not allege the MDHR issued a closure notice, nor has Mayo received one. (*See* Kiel Am. Compl.)

Kiel's Amended Complaint alleges facts regarding her Christian beliefs, her request for religious exemption, and her legal conclusions that Mayo discriminated against her based on religion (*Id.* ¶¶ 13, 77, 83, 91.) Kiel does not allege she advised Mayo that she objected to the vaccines because of her (mistaken) belief they allegedly contain "cells from aborted human babies" when she requested her religious exemption. (*Id.* ¶ 13.) She only vaguely alleges she submitted good faith statements about her sincerely held religious beliefs, stating she "submitted additional information" to support her exemption request, and asserting she informed Mayo about a conflict between her religious beliefs and the Policy. (*Id.* ¶¶ 46, 52, 75–76.)

### D.   *Plaintiff Miller: Failed to Qualify for Vaccine Policy Exemption.*

Miller worked as a Registered Nurse at Mayo. (McNee Ex. 3, Miller Am. Compl. ¶ 10.) Miller requested a religious exemption from vaccination. (*Id.*) Mayo reviewed and denied her request and subsequent appeal. (*Id.*) Miller continued to refuse the COVID-19 vaccines. (*Id.* ¶ 12.) Consistent with its Policy, Mayo terminated Miller's employment on January 3, 2022. (*Id.*)

On December 28, 2021, Miller filed a Charge with the EEOC and MDHR, alleging religious discrimination related to the denial of a religious accommodation from vaccination; Miller alleged no facts about her termination. (*Id.* ¶ 3; McNee Ex. 13.) Miller did not assert a disability discrimination or failure-to-accommodate claim. (McNee Ex. 13.) Her Charge alleges she had a sincerely held religious belief that conflicted with

Mayo's vaccine requirement, notified Mayo about her religious objections, and requested a religious accommodation from the Policy, and Mayo reviewed and denied this request. (*See generally id.*) But Miller *did not claim* that Mayo terminated her employment because of her religious beliefs (her employment had not yet been terminated), or (2) discrimination or failure to accommodate because of a disability. (*See generally id.*) On February 23, 2022, the EEOC issued a Right-to-Sue Notice. (Miller Am. Compl. ¶¶ 3, 12; McNee Ex. 14.).

On July 6, 2022, Miller filed a second Charge with the EEOC, adding age discrimination and facts related to termination; she did not reference disability discrimination or the ADA. (McNee Exs. 15–16.) Miller's second Charge mentions nothing about religious discrimination. (*Id.* Ex. 15.) The EEOC issued a second Right-to-Sue Notice on July 22, 2022 (*Id.* Ex. 16.), and on July 27, 2022, the MDHR issued a Right-to-Sue Letter. (*Id.* Ex. 17.)

Miller's Amended Complaint alleges facts regarding her Christian beliefs, her request for religious exemption, and her legal conclusions that Mayo discriminated against her based on religion (Miller Am. Compl. ¶¶ 11, 33–35, 80, 86, 94.) Miller does not allege she advised Mayo that she objected to the vaccines because of her (mistaken) belief they allegedly contain "aborted baby cells" when she requested her religious exemption. (*Id.* ¶ 11.) She only vaguely alleges she submitted good faith statements about her sincerely held religious beliefs to Mayo; she pleads she "submitted additional information" that allegedly supported her exemption request, (*Id.* ¶¶ 50, 57, 79, 93.)

E.    *Plaintiff Ringhofer: Failed to Qualify for Vaccine Policy Exemption.*

Ringhofer worked for Mayo as a National Register Emergency Medical Technician Paramedic. (McNee Ex. 4, Ringhofer Am. Compl. ¶ 28.) He requested a religious exemption from taking the COVID-19 vaccines. (*Id*. ¶ 1.) Mayo reviewed and denied his request and subsequent appeal. (*Id*. ¶¶ 1, 50) Ringhofer continued to refuse the COVID-19 vaccines. (*Id*. ¶ 54) Consistent with its Policy, Mayo terminated Ringhofer's employment on January 3, 2022. (*Id*.)

Ringhofer filed his first Charge with the EEOC and MDHR on January 31, 2022, alleging religious discrimination related to the denial of his request for religious accommodation to vaccination and termination. (Am. Compl. ¶ 3, McNee Ex. 18.) His Charge alleged he had a sincerely held religious belief that conflicted with Mayo's Policy. (*Id.*) Ringhofer also alleged he notified Mayo about his religious objections to the COVID-19 vaccines and requested a religious accommodation from vaccination, but Mayo reviewed and denied this request. (*Id*.) But Ringhofer *did not claim* discrimination or failure to accommodate because of a disability. (*See id.*) On February 24, 2022, the EEOC issued a Right-to-Sue Notice. (*Id*. Ex. 19.) On June 29, 2022, Ringhofer filed a second EEOC Charge. (*Id*. Ex. 20.)  Ringhofer alleged age discrimination but again did not allege disability discrimination. (*Id*.) The EEOC issued a Right-to-Sue Notice on July 5, 2022 (*Id*. Ex. 21), and the MDHR issued a closure notice on July 27, 2022. (*Id*. Ex. 22.)

Ringhofer's Amended Complaint alleges facts regarding his Christian beliefs, his request for religious exemption, and his legal conclusions that Mayo discriminated

against him based on religion (Ringhofer Am. Compl. ¶¶ 30–33, 78, 84, 92.)

Ringhofer does not allege he advised Mayo that he objected to the vaccines because of his belief they "were produced with or tested with fetal cell lines." (Am. Compl. ¶ 30.)  Ringhofer vaguely alleges he submitted good faith statements about his sincerely held religious beliefs to Mayo, pleading he "submitted additional information" to allegedly support his exemption request, and concluding he informed Mayo about an alleged conflict between his religious beliefs and the Policy. (Am. Compl. ¶¶ 48, 56, 76–77.)

## STANDARD OF REVIEW

"[D]ismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). A Rule 12(b)(6) motion to dismiss tests the sufficiency of the non-moving party's pleadings; it should be granted if a complaint does not include "enough facts to state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A court accepts as true "well-pleaded factual allegations," viewing them in the light most favorable to the nonmoving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). However, the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678.

To survive a motion to dismiss, a complaint must set forth more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though "'detailed factual allegations'" are not required,

there must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A complaint must include "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face,'" meaning the content *"allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."* *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" and, therefore, must be dismissed. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

The Court may take judicial notice of facts not subject to reasonable dispute and information published on government or health agencies' websites about COVID-19 and CDC guidance regarding COVID-19. Fed. R. Evid. 201(b); *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 591 (8th Cir. 2022); *In re RFC & ResCap Liquidating Trust Action*, 444 F.Supp.3d 967, 969 n.1 (D. Minn. 2020); *Fortuna v. Town of Winslow*, No. 1:21-cv-00248-JAW, 2022 WL 2117717, at *4 (D. Me. June 13, 2022).

Under the applicable standards of review, the Court should dismiss Plaintiffs' Amended Complaints.[4]

---

[4] Most other challenges to employer policies imposing a COVID-19 vaccination mandate have failed, including one recently in this District. *Collingham et al. v. City of Northfield et al.*, No. 21-CV-2466 (PJS/JFD), 2022 WL 1558410, at *3 (D. Minn. May 17, 2022) (dismissing ADA claims because they failed to plausibly allege entitlement to reasonable accommodation from vaccine mandate); *Boone et al. v. Ill. Dep't of Corrections, et al.*,

## ARGUMENT

**I.     ALL     PLAINTIFFS'     RELIGIOUS     DISCRIMINATION     AND ACCOMMODATION CLAIMS FAIL.**

Plaintiffs' Count 1 purports to plead a claim for religious discrimination and failure to accommodate under Title VII. Count 2 purports to plead a claim for religious discrimination under the MHRA. Neither can survive Rule 12(b)(6) analysis.

As an initial matter, Ihde and Miller each failed to exhaust their Title VII and MHRA religious discrimination claims related to their employment terminations because they did not state these claims in their Charges. Likewise, Ihde's and Kiel's MHRA religious discrimination claims fail because they did not exhaust their administrative remedies before the MDHR after beginning the charge process with that agency.

Plaintiffs Ihde and Rubin's failure-to-accommodate claims under Title VII (they do not assert MHRA failure-to-accommodate claims) related to their testing objection

---

Case No. 21-cv-3229-JES-JEH, 2022 WL 17083394, at *3–5 (C.D. Ill. Nov. 18, 2022); *Marte v. Montefiore Med. Ctr.*, No. 22-CV-03491-CM, 2022 WL 7059182, at *4–5 (S.D.N.Y. Oct. 12, 2022); *Beckerich v. St. Elizabeth Med. Ctr.*, 563 F.Supp.3d 633, 647 (E.D. Ky., Sept. 24, 2021); *Halczenko v. Ascension Health, Inc.*, 37 F.4th 1321, 1326 (7th Cir. 2022); *Johnson v. Tyson Foods, Inc.*, No. 21-cv-01161-STA-ja, 2022 WL 2161520, at *8 (W.D. Ten., June 15, 2022); *Doe v. Hochul*, No. 3:21-cv-1078, 2022 WL 446332, at *7 (N.D.N.Y., Feb. 14, 2022); *Does 1-6 v. Mills*, 566 F.Supp.3d 34, 56 (D. Me. 2021); *Together Employees v. Mass Gen. Brigham Inc.*, 573 F.Supp3d 412, 430–31, 444–45 (D. Mass. Nov. 10, 2021); *O'Hailpin v. Hawaiian Airlines, Inc.*, No. 22-00007 JAO-KJM, 2022 WL 314155, at *10 (D. Haw. Feb. 2, 2022); *Creger v. United Launch Alliance LLC*, 571 F.Supp.3d 1256, 1264–65 (N.D. Ala. Nov. 30, 2021); *McKenna v. HP Inc.*, No. CV-22-08041-PCT-MTL, 2022 WL 1555391, at *2 (D. Ariz. May 17, 2022); *Klaassen v. Trs. of Ind.*, 7 F.4th 592, 594 (7th Cir. 2021); *Harsman v. Cincinnati Children's Hosp. Med. Ctr., et al.*, No. 1:21-cv-597, 2021 WL 4504245 (S.D. Ohio, Sept. 30, 2021); *Bridges et al. v. Houston Methodist Hosp.*, 543 F. Supp.3d 525, 528 (S.D. Tex. 2021), *aff'd*, 2022 WL 2116213 (5th Cir. June 13, 2022).

each fail because neither has plausibly pleaded that she has a sincerely held religious belief that conflicts with COVID testing. Rather, Mayo granted Ihde and Rubin a reasonable accommodation when it exempted them from vaccination by requiring COVID testing instead. Ihde and Rubin are not entitled to the accommodation of their choice.

Plaintiffs Kiel, Miller, and Ringhofer's failure-to-accommodate claims under Title VII (they do not assert an MHRA failure-to-accommodate claims) related to their vaccination objections fail because they have not plausibly pleaded they each have a sincerely held religious belief that conflicts with vaccination or that they each communicated that conflict to Mayo.

Finally, each Plaintiff's religious discrimination claims fail to plead an inference of discrimination or any causal connection between their religion and their subsequent terminations of employment. Accordingly, each Plaintiff's religious discrimination claims in Counts I and II must be dismissed.

A.     **Ihde and Miller Fail to Plead Plausible Claims Related to their Terminations Because they Failed to Exhaust their Administrative Remedies.**

Under Title VII, a plaintiff must exhaust her administrative remedies on discrimination claims before filing suit. *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 800 (8th Cir. 2011). To satisfy the exhaustion requirement, a charge must include information "sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim." *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 697 (8th Cir. 2009); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103

(2002) ("Each incident of [alleged] discrimination . . . constitutes a separate actionable 'unlawful employment practice.'"). In any subsequent lawsuit, a plaintiff may only "seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Nichols v. Am. Nat. Ins. Co.*, 154 F.3d 875, 886-87 (8th Cir. 1998).

Failure to exhaust is a basis for dismissal at this stage. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012) (affirming dismissal of plaintiff's retaliation claim under Title VII because she "failed to exhaust the retaliation claim"); *Brooks*, 655 F.3d at 801 (affirming dismissal of claims for age discrimination and Title VII retaliation for failure to exhaust); *Kahsai v. DeJoy*, No. 20-1060 (JRT/ECW), 2022 WL 1217262, at *3 (D. Minn. Apr. 25, 2022) (dismissing Title VII and ADA claims for failure to exhaust administrative remedies).

Neither Ihde nor Miller alleged in their EEOC Charges that Mayo engaged in religious discrimination by terminating their employment. (McNee Exs. 7, 9, 13, 15); *Boone*, 2022 WL 17083394, at *4 (within COVID-19 vaccine mandate context, dismissing plaintiffs' Title VII claims for failure to exhaust administrative remedies). Ihde and Miller cannot sue under Title VII based on non-exhausted termination claims. *Nichols*, 154 F.3d at 886-87; *Parisi v. Boeing Co.*, 400 F.3d 583, 585-86 (8th Cir. 2005). Accordingly, because neither Ihde nor Miller exhausted administrative remedies on their Title VII termination claims, the Court must dismiss claims related to their employment terminations.

**B.     Count 1 Fails Because Each Plaintiff Has Failed to Sufficiently Plead Religious Discrimination/Failure to Accommodate.**

Count 1 fails because each Plaintiff has failed to plead facts sufficient to support it. Plaintiffs need not plead facts establishing a *prima facie* case to survive dismissal, but the "elements of the *prima facie* case are [not] irrelevant to a plausibility determination." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021); *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016). The Court need not "'conjure up unpleaded allegations'" to save Plaintiffs' claims; nor should the Court try to "divine [their] intent and create claims that are not clearly raised." *Gregory v. Dillard's, Inc*., 565 F.3d 464, 473 (8th Cir. 2009).

To establish a Title VII failure-to-accommodate religion claim, Plaintiffs each must plausibly plead that they: (1) had a sincerely held religious belief that conflicted with an employment requirement; (2) informed Mayo of that sincerely held religious belief; and (3) suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Mann v. Frank*, 7 F.3d 1365 (8th Cir. 1993); *Rooney v. Rock-Tenn Converting Co*., 878 F.3d 1111, 1115 (8th Cir. 2018); *Hannoon v. Fawn Eng. Corp.*, 324 F.3d 1041, 1046 (8th Cir. 2003); *E.E.O.C. v. Kelly Servs., Inc*., 598 F.3d 1022, 1030 (8th Cir. 2010).

Plaintiffs "must demonstrate both that the belief or practice is religious and that it is sincerely held." *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002) (citations omitted). Plaintiffs must plead more than social, political, or personal preferences or other

nonreligious concerns about testing. *See* EEOC's *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, question and answer L.2 https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L (last visited Nov. 30, 2022); *Brown v. Gen. Motors Corp.*, 601 F.3d 956, 960 (8th Cir. 1979). Plaintiffs must plead three factors to establish their objections sound in religion: (1) the objections address fundamental and ultimate questions related to "deep and imponderable matters"; (2) the objections are part of a comprehensive belief system, and are not an isolated teaching; and (3) formal and external signs accompany the objections. *Africa v. Com. of Pa.*, 662 F.2d 1025, 1032 (3d Cir. 1981).  Deep and imponderable matters concern "existential matters, such as man's sense of being; teleological matters, such as man's purpose in life; and cosmological matters, such as man's place in the universe." *U.S. v. Meyers*, 95 F.3d 1475, 1483 (10th Cir. 1996). Formal and external signs include "formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observance of holidays and other similar manifestations associated with the traditional religions." *Africa*, 662 F.2d at 1035.

**1.      Plaintiffs Ihde and Rubin have not pleaded their objections to testing are religious in nature, have not pleaded a conflict between religious beliefs and testing, and are not entitled to the accommodation of their choice.**

Neither Ihde nor Rubin has plausibly alleged a sincerely held religious belief that conflicted with Mayo's Policy requiring testing after each received an approved vaccination exemption as accommodation.

Ihde and Rubin each allege their religious beliefs only in conclusory fashion, most significantly providing *no* plausible allegations showing how their objections to the testing requirement are religious. *Fallon v. Mercy Catholic Med. Ctr. of S.E. Penn.*, 877 F.3d 487, 492–93 (3d Cir. 2017). They offer only general allegations concerning their belief in God, which do not give them a "blanket privilege" to defy their employers' lawful policy. *Africa v. Com. of Pa.*, 662 F.2d at 1031–32; *Finkbeiner v. Geisinger Clinic*, ___ F.Supp. 3d ___, No. 4:21-CV-01903, 2022 WL 3702004, at *3 (M.D. Pa. Aug. 26, 2022); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 292 (2d. Cir. 2021) (explaining Title VII does not provide employees with "a blanket religious exemption allowing them to continue working at their current positions unvaccinated.").

### a. Neither Ihde nor Rubin has pleaded the existence of a sincerely held religious belief about COVID testing.

Neither Ihde nor Rubin pleads facts showing that their testing objections relate to any "deep and imponderable matters," a hallmark of religious beliefs. *Africa*, 662 F.2d at 1032. Ihde vaguely states COVID-19 testing violates her conscience before "Elohim" and God gives her the rights to ***choose***. (Ihde Am. Compl. ¶¶ 15–17.) Rubin vaguely alleges that she listened to God. (Rubin Am. Compl. ¶ 36.) Neither pleads a plausible link between their testing objections and their sense of being, purpose in life or place in the universe; thus, they have not shown their testing objections relate to deep and imponderable matters. *See Meyers*, 95 F.3d at 1483.

Ihde and Rubin also do not plausibly allege that their testing objections relate to any part of the comprehensive Christian "belief-system." *Fallon*, 877 F.3d at 491. Ihde

objects to COVID-19 testing because she believes testing is irresponsible and violates her "conscience" (Ihde Am. Compl. ¶ 16.) Ihde's other religious allegations solely concern her general Christian beliefs. (*Id.* ¶¶ 15–17) Ihde's allegation that God heals her does not make refusal to test part of a comprehensive Christian belief system; nor does it prohibit vaccination. (*Id.* ¶ 15.)

Rubin, likewise, alleges she is following God's path in refusing to undergo weekly testing. (Rubin Am. Compl. ¶ 36.) As with Ihde, Rubin cites no Christian tenet, teaching, or principle that conflicts with weekly testing, rather offering general allegations about her Christian faith. (*Id.* ¶¶ 35–36) Alleging that God will strengthen and protect her does not make refusal to test part of a comprehensive Christian belief system.

Ultimately, Ihde and Rubin's testing objections arise from their isolated beliefs and personal preferences, which Mayo is not required to accommodate. *See Fallon*, 877 F.3d at 492 (isolated moral teaching alone is "not a comprehensive system of beliefs about fundamental or ultimate matters"); *Vetter v. Farmland Indus., Inc.*, 120 F.3d 749, 751 (8th Cir. 1997); *Egelkrout v. Aspirus, Inc.*, No. 22-cv-118-bbc, 2022 WL 2833961 (W.D. Wis. Jul. 20, 2022) (in the COVID-19 vaccination context, dismissing plaintiff's Title VII and ADA claims under Rule 12(b)(6)); *Finkbeiner*, 2022 WL 3702004, at *4. Neither Ihde nor Rubin has plausibly alleged that their testing objections relate to any part of the comprehensive Christian "belief-system," so their claims must be dismissed.

Finally, Ihde and Rubin do not plausibly allege any "formal and external signs" demonstrating their faith bars weekly testing. *Fallon*, 877 F.3d at 491. Ihde and Rubin

plead no facts related to Christian service, ceremony, clergy, or any other external religious signs conflicting with weekly testing.[5]

Accordingly, Ihde and Rubin fail to plausibly allege their testing objections sound in religion.

> ### b.   Neither Ihde nor Rubin has plausibly alleged a conflict between their religious beliefs and Mayo's Policy.

Because Ihde and Rubin have failed to plead a sincerely held religious belief regarding testing, no conflict exists with any "employment requirement," which itself is a necessary element of their claims. *Kelly Servs., Inc*., 598 F.3d at 1030. Moreover, neither Ihde nor Rubin has plausibly alleged the existence of a conflict between a sincerely held religious belief and the Policy. *See Boone*, 2022 WL 17083394, at *5 ("While Plaintiffs allege that [mandatory nasal swab COVID-19 testing] conflicts with their religious beliefs, they do not indicate the nature of the conflict, failing to identify any religious tenet which is offended by this testing."). General allegations that God heals or gives strength do not establish a conflict with the Policy. Ihde and Rubin invite the Court to speculate about a conflict between Mayo's Policy and some unidentified aspect of their alleged religious beliefs. The Court should not infer such a conflict where it has not been pleaded. *Twombly*, 550 U.S. at 555. Ihde and Rubin's failure-to-accommodate claims should each therefore be dismissed with prejudice.

---

[5] Ihde and Rubin also cite various portions of testimony they gave during their unemployment proceedings. (Ihde Am. Compl. ¶¶ 15, 17; Rubin Am. Compl. ¶ 36.) The Court should disregard Ihde and Rubin's cited unemployment testimony because it is irrelevant to their failure-to-accommodate claim, as it undisputedly surfaced *after* termination. *Kelly Servs*., 598 F.3d at 1030.

> c. **Ihde and Rubin are not entitled to the accommodation of their choice.**

Ihde asserts Mayo should have allowed her to work remotely. (Ihde Am. Compl. ¶ 45.) Rubin alleges Mayo should have allowed her to continue working while unvaccinated. (Rubin Am. Compl. ¶ 48.) Title VII does not require employers to accommodate employees' preferences, so long as they provide a reasonable accommodation. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68–69 (1986); *Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1031 (8th Cir. 2008); *Haliye v. Celestica Corp.*, 717 F. Supp. 2d 873, 879 (D. Minn. 2010); *Boone*, 2022 WL 17083394, at *5. Mayo accommodated Ihde and Rubin by allowing them to continue working without vaccination, provided they tested according to the Policy. Their failure-to-accommodate claims each fail to state a claim upon which relief may be granted.

> 2. **Plaintiffs Kiel, Miller, and Ringhofer have not plausibly pleaded that their objections to the vaccine requirement are religious in nature, that Mayo knew about their religious beliefs, and that a conflict exists between their religion and the Policy.**

> a. **Neither Kiel, Miller, nor Ringhofer have pleaded facts supporting a sincerely held religious belief.**

Kiel, Miller, and Ringhofer allege they cannot take the vaccines because the vaccines were "produced with or tested" with "aborted baby cells," "cells from aborted human babies," or "fetal cell lines." (Kiel Am. Compl. ¶ 13; Miller Am. Compl. ¶ 11; Ringhofer Am. Compl. ¶ 30.) But these plaintiffs do not plead their vaccine objections relate to any "deep and imponderable matters." *Africa*, 662 F.2d at 1032. They evidently expect the Court will connect their abortion-related objections to "deep and imponderable

matters," but the Court need not conjure up allegations to save their claim. *Gregory*, 565 F.3d at 473.

These Plaintiffs also do not plausibly connect their vaccine objections to a comprehensive Christian "belief-system." *Africa*, 662 F.2d at 1032. Again, they state objections to "abortion," yet do not plausibly link their vaccine objections to any ***specific*** Christian tenet or teaching. Notably, none of these three Plaintiffs cites in the pleadings to any specific Christian tenet or teaching supporting their abortion-related objections. The Court need not conjure up allegations to save claims that are not properly pled. *Gregory*, 565 F.3d at 473.

Finally, these Plaintiffs do not plead any "formal and external signs" demonstrating that their Christian faith bars the vaccines. *Africa*, 662 F.2d at 1032. At most, these Plaintiffs demonstrate that their abortion-related objections arise out of conscience, not religion. *Fallon*, 877 F.3d at 492 (affirming dismissal and explaining that conscience-based objections do not "address fundamental and ultimate questions having to do with deep and imponderable matters, nor are they comprehensive in nature."). Mayo need not accommodate Plaintiffs' personal conscience objections under Title VII. *Vetter,* 120 F.3d at 751.

In sum, Plaintiffs Kiel, Miller, and Ringhofer fail to plausibly allege their vaccine objections are religious in nature.

        **b.**        **Neither Kiel, Miller, nor Ringhofer has plausibly alleged they informed Mayo about their sincerely held religious beliefs.**

Plaintiffs must show that Mayo knew of their sincerely held religious beliefs that conflicted with vaccination. *Kelly Servs*., 598 F.3d at 1030. Kiel, Miller and Ringhofer all allege they "informed Mayo of the conflict between [their] religious belief and the Vaccine Mandate." (Kiel Am. Compl. ¶ 76; Miller Am. Compl. ¶ 79; Ringhofer Am. Compl. ¶ 77.) Those allegations are "formulaic recitation of the elements of a cause of action," and do not qualify as plausible. *Iqbal*, 556 U.S. at 678. Instead, Plaintiffs must plead *facts* showing they gave Mayo notice about their sincerely held religious reliefs, which they have failed to do. *Cruzan v. Special Sch. Dist, No. 1*, 294 F.3d 981, 983 (8th Cir. 2002); *O'Connor v. Lampo Group, LLC*, No. 3:20-cv-00628, 2021 WL 4480482, at *8 (M.D. Tenn. Sept. 29, 2021).

Instead, Plaintiffs Kiel, Miller and Ringhofer assert they submitted "good faith statements" of their sincerely held religious beliefs, with "explanations" as to how their religion prevents them from getting vaccinated; and that they "submitted additional information" supporting their exemption requests. (Kiel Am. Compl. ¶¶ 46, 52, 75–76; Miller Am. Compl. ¶¶ 50, 57, 79, 93; Ringhofer Am. Compl. ¶¶ 48, 56, 76–77). They do not plead, however, what the verbiage or content of the "good faith statements" was. They plead no details of the "explanations" and nothing about the content of the

additional information was that they purportedly submitted.   Kiel, Miller, and Ringhofer

fail to plausibly allege they informed Mayo about their religious beliefs.[6]

> **c.      Neither Kiel, Miller, nor Ringhofer plausibly alleged that their religious beliefs conflict with the Policy.**

Kiel, Miller, and Ringhofer all rely on various erroneous allegations about the

vaccines. Kiel alleges "her religious beliefs prevent her from putting into her body the

Covid-19 vaccines which are available, because they were all produced with or tested

with cells from aborted human babies." (Kiel Am. Compl. ¶ 13.) Miller alleges "[she] is a

Christian and her religious exemption was based on opposition to the use of vaccines

produced with or tested by aborted baby cells." (Miller Am. Compl. ¶ 33.) Ringhofer

alleges "[he] believes the Vaccine Mandate violates his religious beliefs and conscience

to take the Covid-19 vaccine because the vaccines were produced with or tested with fetal

cell lines." (Ringhofer Am. Compl. ¶ 30.)

Those allegations incorrectly suggest that the vaccines contain aborted human fetal

cells.  As stated on the CDC's website, the COVID-19 vaccines manufactured by Pfizer,

Moderna, and Johnson and Johnson do not contain any "aborted fetal cells." *Pfizer-*

*BioNTech COVID-19 Vaccine (also known as COMIRNATY): Overview and Safety*,

CENTERS      FOR      DISEASE      CONTROL      AND      PREVENTION,

https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-

---

[6] Ringhofer also cites various portions of testimony from his unemployment proceeding. (Ringhofer Am. Compl. ¶¶ 30, 33.) The Court should disregard his cited unemployment testimony as irrelevant to his failure-to-accommodate claim, because it undisputedly surfaced *after* termination. *Kelly Servs.*, 598 F.3d at 1030.

BioNTech.html (last visited Nov. 30, 2022); *Moderna COVID-19 Vaccine (also known as Spikevax): Overview and Safety*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html (last visited Nov. 30, 2022); *Johnson & Johnson's Janssen COVID-19 Vaccine: Overview and Safety*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Janssen.html (last visited Nov. 30, 2022). Because their objections to the COVID-19 vaccine are based on false information, Kiel, Miller, and Ringhofer do not plead any ***facts*** to show that a conflict existed between a religious belief and their employment obligations. *Boone*, 2022 WL 17083394, at *5.

Because their premise is factually incorrect, no conflict actually exists with Mayo's vaccine Policy. *See Egelkrout.*, 2022 WL 2833961, at *3; *Finkbeiner v. Geisinger Clinic*, No. 4:21-CV-01903, 2022 WL 3702004, *1, 4 (M.D. Pa. Aug. 26, 2022) (granting motion to dismiss religious discrimination claims involving objections to COVID-19 testing requirement where complaint failed to establish sincere religious opposition to testing and noting that plaintiff's objections consisted of "distorted statements and anti-vaccine hocus-pocus").

Courts routinely dismiss cases where the factual record demonstrates no actual conflict between the employee's religious belief and the employer's work requirements. *O'Connor*, 2021 WL 4480482, at *7–9 (granting Rule 12(b)(6) motion where plaintiff did not allege religious belief that conflicted with employment requirement); *Lively v. Kroger Co. of Mich.*, 2021 WL 791024, at *1, *5 (granting summary judgment where

plaintiff was fired for unexcused absences when she had sought time off to attend religious conference because conference schedule did not overlap with employee's work shift so no conflict existed between religious beliefs and attendance requirement).

The Policy does not require Kiel, Miller, or Ringhofer to take a vaccine produced with or tested by "aborted baby cells." These Plaintiffs' circumstances are no different from the employees in *O'Connor* and *Lively* who asserted an incorrect belief that the employer's requirement conflicted with their religious beliefs. These Plaintiffs cannot rely on false information to suggest their religious beliefs conflict with the Policy. Their failure to accommodate claim under Title VII fails.

> **3.    All Plaintiffs failed to plead facts supporting an inference of religious discrimination and likewise failed to plead a causal connection between their protected status and subsequent terminations.**

Plaintiffs failed to plead facts showing that Mayo treated similarly situated employees outside Plaintiffs' protected class differently. Nor do Plaintiffs plausibly plead a causal connection between their protected status (religion) and subsequent terminations.

To establish a plausible disparate treatment claim, each Plaintiff must show: (1) they belong to a protected class; (2) they met the employer's legitimate job expectations; (3) they suffered an adverse employment action; and (4) ***circumstances giving rise to an inference of discrimination*** (for example, similarly situated employees ***outside*** the protected class were treated differently). *Rinchuso v. Brookshire Grocery Co.*, 944 F.3d 725, 730 (8th Cir. 2019); *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853-54 (8th Cir. 2012). Membership in a protected class alone is insufficient. *See, e.g.*, *Hunter v.*

*Anderson*, Civ. No. 12-2008, 2013 WL 3974342, at *10 (D. Minn. July 31, 2013) (simply alleging harm and membership in protected class "do nothing to make the allegation of discrimination 'plausible' as required by *Iqbal*"); *Blomker v. Jewell*, No. CIV.A. 14-174, 2015 WL 853617, at *5 (D. Minn. Feb. 26, 2015), *aff'd*, 831 F.3d 1051 (8th Cir. 2016) (dismissing claims without allegations suggesting grounds for discrimination).

> **a.   All Plaintiffs failed to plausibly allege they were treated differently from non-Christian employees.**

Plaintiffs do not plausibly allege they were treated differently than similarly situated ***non-Christian*** employees with similar job duties or roles; accordingly, they have not established an inference of discrimination. *Warmington*, 998 F.3d at 798. Plaintiffs reference other employees, but these other employees appear also to be ***Christian***. (Ihde Am. Compl. ¶ 79; Rubin Am. Compl. ¶ 63; Kiel Am. Compl. ¶ 71; Miller Am. Compl. ¶ 74; Ringhofer Am. Compl. ¶ 72.) They do not allege they were treated differently from similarly situated employees who identify as Atheists, Buddhists, or Muslims. *See Marte*, 2022 WL 7059182, at *4 (granting Rule 12(6) motion because complaint did not plausibly plead facts showing employer granted COVID-19 vaccine exemptions to employees outside protected class). Because Plaintiffs have not plausibly alleged an inference of discrimination, their disparate treatment claim under Title VII fails.

> **b.   All Plaintiffs failed to plead a causal connection between their protected status and terminations.**

To survive dismissal under Rule 12(b)(6), Plaintiffs must plausibly allege facts suggesting disparate treatment, so the Court may infer a causal connection between their protected status (religion) and termination. *EEOC v. Murphy Motor Freight Lines, Inc.*,

488 F.Supp. 381, 386–87 (D. Minn. 1980) (explaining courts should infer causal connection between protected status and discharge only after plaintiff makes sufficient showing of disparate treatment); *Lewis v. Am. Airlines, Inc*., No. 90 C 2521, 1991 WL 128630, at *3 (N.D. Ill. July 11, 1991) (granting motion to dismiss because employee failed to allege facts showing disparate treatment, and court could not infer causal connection). As stated above, Plaintiffs plead no allegations showing Mayo treated them differently from similarly situated non-Christian employees. Because they have not established disparate treatment, the Court cannot infer a causal connection between their religion and termination, and their disparate treatment claim fails.

Moreover, Plaintiffs do not allege Mayo terminated their employment *because of* their protected class. *Lewis*, 1991 WL 128630, at *3 (explaining Title VII race discrimination claim fails because he alleged no facts showing causal connection between race and termination). They each admit that Mayo terminated them because they refused to get vaccinated or undergo weekly testing. (Ihde Am. Compl. ¶ 64; Rubin Am. Compl. ¶ 12; Kiel Am. Compl. ¶ 14; Miller Am. Compl. ¶ 12; Ringhofer Am. Compl. ¶ 54.) Plaintiffs each concede Mayo's actions were not motivated by their religious beliefs, but by Mayo's enforcement of its Policy. The Court cannot infer a causal connection between Plaintiffs' religious beliefs and terminations—because no connection exists—and should dismiss each disparate treatment claim with prejudice.

C.     **Count 2 Fails as to Plaintiffs Ihde and Kiel, Because They Have Not Exhausted Their Administrative Remedies before the MDHR, and Fails as to All Plaintiffs for the Same Reasons Count I Fails.**

A plaintiff pursuing an MHRA claim must either initiate a lawsuit or file a charge with the MDHR within one year of the allegedly discriminatory act. Minn. Stat. § 363A.28, subds. 1, 3; *Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 699–700 (Minn. 1996); *Coryea v. Rochester Ind. Sch. Dist. No. 535*, No. A09-2333, 2010 WL 3463650, at *4 (Minn. Ct. App. Sept. 7, 2010). Once the charge process is initiated, a plaintiff may sue only after receiving a notice of right to sue from the MDHR Commissioner. Minn. Stat. §§ 363A.28, subd. 6(b)–(e), 363A.33, subd. 1.

Plaintiffs Ihde and Kiel filed Charges that indicate they were cross-filed with the MDHR. (McNee Exs. 7, 9, 11.) Neither Ihde nor Kiel alleges she received a closure notice from the MDHR. Accordingly, neither can commence suit against Mayo under the MHRA for failure to exhaust the administrative process. The Court should dismiss Ihde and Kiel's Count 2 because of this procedural defect.

In addition to the procedural defects, all Plaintiffs' religious discrimination claims under the MHRA fail for the same substantive reasons as their parallel claims under Title VII, as the MHRA-claims are analyzed under the same standard as Title VII claims. *Said v. Mayo Clinic*, 44 F.4th 1142, 1147 n.6 (8th Cir. 2022). *See supra* Section I.B.

## II.     ALL PLAINTIFFS' ADA CLAIMS IN COUNT III OF THE AMENDED COMPLAINTS SHOULD BE DISMISSED.

Count 3 of each Plaintiff's Amended Complaint should be dismissed because they have failed to state a claim upon which relief may be granted, as outlined below.

First, three Plaintiffs (Kiel, Miller, and Ringhofer) have failed to exhaust their administrative remedies under the ADA, which requires dismissal.

Each Plaintiff's claims also fail because not a single Plaintiff alleges any qualifying disability under the ADA. Similarly, no Plaintiff alleges that an exemption from vaccination or testing would constitute a "reasonable accommodation" for some unidentified disability. Finally, each Plaintiff fails to plausibly plead that Mayo subjected them to an unlawful medical examination or inquiry under the ADA. The Court should dismiss Plaintiffs' ADA claims with prejudice.

### A.    Three Plaintiffs—Kiel, Miller, and Ringhofer—Failed to Exhaust their Administrative Remedies.

A plaintiff pursuing an ADA lawsuit must first exhaust administrative remedies by filing a charge with the EEOC and receiving a notice of right-to-sue.   42 U.S.C. § 12117(a); *Burkett v. Glickman*, 327 F.3d 658, 660 (8th Cir. 2003); *Randolph v. Rodgers,* 253 F.3d 342, 347 n.8 (8th Cir. 2001).

If a plaintiff does not exhaust administrative remedies on an ADA claim, the Court must dismiss the claim. *Parisi v. Boeing Co.*, 400 F.3d 583, 585-86 (8th Cir. 2005).

Plaintiffs Kiel, Miller, and Ringhofer do not mention the ADA, or any disability-related claim in their EEOC Charges. (McNee Exs. 11, 13, 15, 18, 20, 23, and 25). Accordingly, Kiel, Miller, and Ringhofer cannot commence suit against Mayo under the ADA, because they did not exhaust the administrative process, and their ADA claims should be dismissed.

**B.      All Five Plaintiffs Have Failed to Adequately Plead the Elements of an ADA Failure-to-Accommodate Claim.**

Count 3 of the Amended Complaints asserts ADA disability discrimination (failure to accommodate). Each Plaintiff's ADA claims (contained in Count 3 of their Amended Complaints) should be dismissed.

Notwithstanding the inclusion of an ADA[7] claim in their lawsuits, not one of the Plaintiffs has alleged the existence of a disability. (*See generally* Am. Compls.); 42 U.S.C. § 12112(a); *Shklyar v. Carboline Co.*, No. 4:22 CV 391 RWS, 2022 WL 2867073 (E.D. Mo. July 21, 2022) (dismissing ADA disability discrimination and retaliation claims arising out of enforcement of COVID-19 policies because plaintiff did not plead disability). Nor, for that matter, has any Plaintiff alleged that an exemption from vaccination or testing would constitute a "reasonable accommodation" for some unidentified disability.

A court in this District has recently dismissed such claims. In *Collingham et al. v. City of Northfield et al.*, No. 21-CV-2466 (PJS/JFD), 2022 WL 1558410, at *3 (D. Minn.

---

[7] In addition, even though Ihde and Rubin filed EEOC Charges that generally alleged "disability" discrimination, these Charges do not put Mayo on sufficient notice as to the nature of Ihde and Rubin's purported failure-to-accommodate claim before the EEOC because they failed to specify a disability, much less link one to a request for an accommodation. (McNee Exs. 9, 25.) *Booth v. City of Roswell*, 754 F. App'x 834, 837 (11th Cir. 2018) (dismissing ADA failure-to-accommodate claim for failure to exhaust because plaintiff did not relay "what  his disability was, nor mention an accommodation request, a failure to accommodate" in EEOC Charge); *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 719 (8th Cir. 2012). Their Charges failed to put Mayo on fair notice about the nature of Ihde and Rubin's purported failure-to-accommodate claim. To those ends, Ihde and Rubin failed to exhaust their administrative remedies as to their failure-to-accommodate claim.

May 17, 2022), the defendant instituted a vaccine policy requiring employees to be vaccinated against COVID-19 unless they received a medical or religious exemption. 2022 WL 1558410, at *1. Some employees requested exemptions but were denied and ultimately discharged for failing to comply. *Id.* The court dismissed their subsequent ADA claims because they failed to plausibly allege (1) each plaintiff had a qualifying disability; or (2) an exemption to the defendant's COVID-19 vaccination policy would be a "reasonable accommodation" for each plaintiff's unidentified disability. *Id.* Applying this rationale, Count 3 should be dismissed.

### C. All Five Plaintiffs Have Failed to Properly Plead a Violation of the ADA's Prohibition Against Medical Examinations and Inquiries.

Count 3 of the Amended Complaints also includes allegations that Mayo violated the ADA's prohibition against medical examinations and inquiries. The ADA prohibits employers from requiring medical examinations or making medical inquiries as to whether an employee has a disability or the nature of that disability unless the examination or inquiry is job-related and consistent with business necessity. 42 U.S.C. § 12112 (d)(4)(a). "The EEOC has defined 'disability-related' questions as those 'likely to elicit information about a disability.'" *Dingwerth v. Astrue*, No. 4:05CV2003 MLM, 2007 WL 2507739, at *13 (E.D. Mo. June 28, 2007).

### 1. Plaintiffs Ihde and Rubin (who refused testing) fail to state a claim under the ADA related to medical examinations and inquiries.

Neither Ihde nor Rubin has pleaded a plausible claim for an ADA violation, based on Mayo's request that they engage in weekly COVID-19 testing after Mayo granted

their religious exemption requests. Becoming infected with COVID-19 alone does not meet the ADA's definition of disability. *See, e.g.*, *McCone v. Exela Techs., Inc.*, No. 6:21-cv-912-CEM-DCI, 2022 WL 801772, at *4 (M.D. Fla., Jan. 14, 2022); *Alvarado v. ValCap Grp., LLC*, No. 3:21-CV-1830-D, 2022 WL 19686, at *5–6 (N.D. Tex., Jan. 3, 2022). Further, a COVID-19 test is not "likely to reveal a disability," *Harrison*, 593 F.3d at 1215, and requiring a negative COVID-19 test is not a disability-related medical inquiry. *McCone*, 2022 WL 801772, at *4; *Alvarado*, 2022 WL 19686, at *5–6. Because Mayo did not require Ihde or Rubin to undergo a disability-related inquiry or medical examination by submitting to a COVID-19 test, neither has established a plausible claim under the ADA.

### 2. Plaintiffs Kiel, Miller, and Ringhofer (all who refused to vaccinate) fail to state an ADA claim concerning prohibited medical examinations and inquiries.

Neither Kiel, Miller, nor Ringhofer has pleaded a plausible claim for violation of the ADA because asking them to receive a vaccine does not constitute a medical examination or inquiry under the ADA. The EEOC has stated: "The act of administering the vaccine is not a 'medical examination' under the ADA because it does not seek information about the employee's physical or mental health." *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last visited Nov. 30, 2022). The EEOC's Guidance

is persuasive here. *Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809, 815 (6th Cir. 2012) (internal quotation marks omitted).

Mayo did not require Kiel, Miller, or Ringhofer to undergo a medical examination. The Policy gave them each a choice: become vaccinated or face termination. *See Griner*, 2022 WL 7501065, at *8; *Doe v. Zucker*, 520 F.Supp.3d 217, 250–51 (N.D.N.Y. 2021) (mandatory vaccination requirement does "not force . . . consent to vaccination"). Given the choice, neither Kiel, Miller, nor Ringhofer received any COVID-19 vaccines. They remained free to work elsewhere when they chose not to follow Mayo's Policy. *Bridges*, 543 F.Supp.3d at 528 (policy requiring employee to receive COVID-19 vaccination was not coercive because employee "can freely choose to accept or refuse a COVID-19 vaccine . . . if she refuses, she will simply need to work somewhere else").

## III.   COUNT 4 OF ALL PLAINTIFFS' AMENDED COMPLAINTS, ALLEGING BREACH OF CONTRACT AND PROMISSORY ESTOPPEL, FAIL.

Count 4 of each Amended Complaint fails because Plaintiffs were employed at will with no contract limiting Mayo's right to terminate their employment at any time. Attempting to circumvent this fact, Plaintiffs point to Mayo's EEO policies, claiming these policies create a unilateral contract. But Mayo's EEO policies are not sufficiently "definite in form" to establish such a contract. Plaintiffs also cannot establish a quasi-contractual claim of promissory estoppel. Plaintiffs have not pleaded plausible claims for relief, and Count 4 must be dismissed.

### A.     Plaintiffs Have Not Pleaded a Viable Unilateral Contract.

Employment in Minnesota is terminable "at will." *See Cederstrand v. Lutheran Brotherhood*, 117 N.W.2d 213, 221 (Minn. 1962). To state a breach of contract claim under Minnesota law, a plaintiff must allege: "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014). Contract formation requires "a specific and definite offer, acceptance, and consideration." *See E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 970 (D. Minn. 2018). "An employer's general statements of policy are no more than that and do not meet the contractual requirements for an offer." *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626 (Minn. 1983).

To avoid their at-will employment status, Plaintiffs allege a unilateral employment contract based on Mayo's EEO policies. However, for such a contract to exist: "(1) there must be an offer that is definite in form and communicated to the employee; (2) the employee must accept the offer; and (3) the employee must furnish consideration for the offer." *Freiberg v. Nextel W. Servs. LLC*, No. 13–361, 2013 WL 6244553, at *13 (D. Minn., Dec. 3, 2013) (citing *Kleinberg v. Kleinberg Protective Agency, Inc.,* 1999 WL 1256436, *2 (Minn. Ct. App. Dec. 28, 1999)).

Plaintiffs point to Mayo's diversity, equity and inclusion policy to try to show a unilateral employment contract. (Ihde Am. Compl. ¶ 113; Rubin Am. Compl. ¶ 97; Kiel Am. Compl.¶ 104; Miller Am. Compl. 107; Ringhofer Am. Compl. ¶ 105.) But the Mayo

policy to which Plaintiffs point is too vague and conclusory to constitute an offer definite in form. *Pine River*, 333 N.W.2d at 630; *Lewis v. Equitable Life Assurance Soc'y of the U.S.*, 389 N.W.2d 876, 883 (Minn. 1986); *McKenzie v. Lunds, Inc.*, 63 F. Supp. 2d 986, 1003 (D. Minn. 1999) (collecting cases). Plaintiffs cite to no specific employment term related to compensation or benefits in an offer leading to a unilateral employment contract.

The Amended Complaints also do not allege Plaintiffs' acceptance of an offer relating to these policies or that they provided consideration in exchange for any offer. *Johnson v. Homeownership Pres. Found.*, No. 09–600 (JRT/JSM), 2009 WL 6067018, at *7 (D. Minn., Dec. 18, 2009), *report & recommendation adopted sub nom. Johnson v. Homeownership Pres. Found.*, 2010 WL 1050333 (D. Minn., Mar. 18, 2010).

An employment policy does not create a contractual relationship between the employee and the employer, particularly where employment is at-will. Plaintiffs cannot avoid their at-will employment by relying on generalized EEO policies, which are aspirational principles, not contractual terms. *McKenzie*, 63 F. Supp. 2d at 1003 (statement of equal employment policy could not form basis for enforceable employment contract); *E.E.O.C. v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 570 (8th Cir. 2007). Plaintiffs' claim for breach of contract based on a unilateral contract should be dismissed with prejudice.

### B. Plaintiffs Have Not Pleaded a Viable Promissory Estoppel Claim.

Alternatively, Plaintiffs posit a promissory estoppel theory. Promissory estoppel is an equitable doctrine that "impl[ies] a contract in law where none exists in fact." *Grouse*

*v. Group Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn. 1981). To establish that claim, a plaintiff must show: (1) a clear and definite promise; (2) the promisor intended to induce reliance on the promise, and the promisee did so rely; and (3) an injustice, unless the promise is enforced. *McKenzie*, 63 F. Supp. 2d at 1003.

No Plaintiff alleges a clear and definite promise that induced reliance. Mayo's EEO policy, like most equal employment policies, states a general intent to promote a respectful workplace and prevent discrimination and harassment. These general statements are not a "clear definite promise" that Plaintiffs will not be required to test for COVID-19 or get vaccinated. *Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 371–72 (Minn. 1995) (rejecting contract claim because statements were "general statements of policy" therefore not "clear and definite"); *Kenneh v. Homeward Bound, Inc.*, 944 N.W.2d 222, 232 (Minn. 2020); *Pine River*, 333 N.W.2d at 626; *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000); *McKenzie*, 63 F. Supp. 2d at 1004.

Further, Plaintiffs do not plead that Mayo's general statements and policies induced some "definite action." *Schibursky v. Int'l Bus. Machines Corp.*, 820 F. Supp. 1169, 1181 (D. Minn. 1993). "Reliance must be more than mere speculation; an actual change in the employee's position is required." *Id.* (citing *Dumas v. Kessler & MaGuire Funeral Home, Inc*., 380 N.W.2d 544, 548 (Minn. Ct. App. 1986). They allege no facts supporting their claims that Mayo's general statements induced them to take (or avoid) any definite action.

Plaintiffs' contract and promissory estoppel allegations are each insufficient, and Count 4 in each Plaintiff's Amended Complaint should be dismissed with prejudice.

## IV.     PLAINTIFFS'      PUNITIVE      DAMAGES      REQUEST      SHOULD      BE     STRICKEN.

Plaintiffs have not plausibly alleged an entitlement to punitive damages under Title VII or the ADA. Plaintiffs also allege they are entitled to punitive damages under the MHRA, but have not moved to amend, as required by Minn. Stat. § 549.191. In addition, Plaintiffs have not established that Mayo acted with "deliberate disregard for the rights or safety of others," as required by Minn. Stat. § 549.20. For these reasons, the Court should strike Plaintiffs' requests for punitive damages.

### A.     Plaintiffs Have Not Plausibly Alleged They Are Entitled to Punitive Damages Under Title VII or the ADA.

To seek punitive damages under Title VII or the ADA, a plaintiff must plausibly allege her employer engaged in discrimination "with "'malice or with reckless indifference to the [employee's] federally protected rights."' *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 553 (8th Cir. 2013) (Title VII) (citing U.S.C. § 1981a(b)(1)); *Canny v. Dr. Pepper/Seven-Up Bottling Grp.*, 439 F.3d 894, 903 (8th Cir. 2006) (ADA). The *Iqbal/Twombly* pleading standard extends to punitive damages. *Shukh v. Seagate Technology, LLC*, 873 F.Supp.2d 1087, 1091 (D. Minn. 2012). The Court may strike improperly pled punitive damages claims under Rule 12(f). Fed. R. Civ. P. 12(f); *Bhatia v. 3M Co.*, 323 F.Supp.3d 1082, 1092 (D. Minn. 2018).

None of the Plaintiffs alleges Mayo acted with "malice" or "reckless indifference" towards their federally protected rights. Instead, each admits Mayo either: (1) gave them a religious exemption from taking the COVID-19 vaccines; (2) allowed them to seek the exemption from the testing requirement; or (3) allowed them to seek an exemption from

the vaccines. (Ihde Am. Compl. ¶¶ 2, 4; Rubin Am. Compl. ¶¶ 1, 39; Kiel Am. Compl.,
¶ 1; Miller Am. Compl. ¶ 1; Ringhofer Am. Compl ¶ 1.) With no allegations to support a
plausible inference of entitlement to punitive damages, Plaintiffs fail to satisfy the
*Iqbal/Twombly* standard. The Court should strike Plaintiffs' punitive damages request
under their Title VII and ADA claims.

### B.    Plaintiffs' Punitive Damages Related to Their MHRA Claims is Premature.

Plaintiffs cannot initially seek punitive damages on their MHRA claims, and the
Court should strike their premature demand. *Zeelan Indus., Inc. v. de Zeeuw*, 706 F.Supp.
702, 705 (D. Minn. 1989). Minn. Stat. Section 549.191 provides that "[u]pon
commencement of a civil action, the complaint must not seek punitive damages." Instead,
a party must later move to amend the pleadings to claim punitive damages and must
include with the motion "one or more affidavits showing the factual basis for the claim."
*Id.*; *see Jackson v. Metro. Council HRA Mgt. Ass'n*, No. 10–2370, 2012 WL 2395187, at
*3–4 (D. Minn. June 25, 2012) (under Minn. Stat. § 549.191, party cannot claim punitive
damages at start of litigation, but must later move to amend); *Laffey v. Ind. School Dist.
No. 625*, 806 F.Supp. 1390, 1406 (D. Minn. 1992); *Clancy v. Vacationaire Estates, Inc*.,
No. 18-2249, 2019 WL 955113, at *11 (D. Minn. Feb. 27, 2019).[8] Minn. Stat. § 549.191.
Plaintiffs' punitive damages demand under their MHRA claims is premature and should
be stricken.

---

[8] *But see Hunter v. Ford Motor Co.*, No. 08–4980 (PJS/JSM), 2010 WL 11537516, at *3
(D. Minn. Jan. 7, 2010) *and Ulrich v. City of Crosby*, 848 F.Supp. 861, 876-877 (D.
Minn. 1994).

### C. Plaintiffs Have Not Established Their Right to Assert Punitive Damages under the MHRA, as Required by Minn. Stat. § 549.20.

To establish a right to assert punitive damages under the MHRA, Plaintiffs must plausibly allege that Mayo acted with "deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20, subd. 1(a); *Jackson*, 2012 WL 2395187, at *3.

Plaintiffs do not plausibly allege that Mayo knew of or intentionally disregarded facts that made injury to their rights highly probable. Minn. Stat. § 549.20(b). Nor do they plead Mayo deliberately proceeded with indifference—if not conscious or intentional disregard—to the risk of any injury to them. *Id*. (b)(1)–(2). The opposite is true; they ***concede*** Mayo gave them religious exemptions or allowed them to seek such exemptions. Mayo did not deliberately disregard the Plaintiffs' rights. Accordingly, the Court should strike Plaintiffs' request for punitive damages under their MHRA claims.

## CONCLUSION

Mayo instituted the Policy to protect its patients, employees, and the community from a deadly disease. It properly considered exemption requests and allowed for medical and religious exemptions where appropriate.

Plaintiffs have not properly pleaded claims under Title VII, the ADA, or the MHRA, and have not properly pleaded breach of contract or promissory estoppel. Their claims fail on procedural and substantive grounds.

Because each Plaintiffs has failed to plausibly establish that Mayo is liable under any of their asserted claims, the Court should dismiss each Amended Complaint with prejudice.

Dated:  November 30, 2022

<div style="margin-left:40%">

s/ Emily A. McNee

George R. Wood, Bar No. 0166017
gwood@littler.com
Kathryn Mrkonich Wilson,
Bar No. 283605
kwilson@littler.com
Holly M. Robbins, Bar No. 260381
hrobbins@littler.com
Emily A. McNee, Bar No. 0395228
emcnee@littler.com
Hannah C. Hughes, Bar No. 0401726
hhughes@littler.com
Lehoan T. Pham, Bar No. 0397635
hpham@littler.com
LITTLER MENDELSON, P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, MN 55402.2136
Telephone:  612.630.1000
Facsimile:   612.630.9626

***ATTORNEYS FOR ALL DEFENDANTS***

</div>

4879-3290-1176.11 / 116426-1001